Anchun Jean Su (DC Bar No. CA285167)
Howard M. Crystal (DC Bar No. 446189)
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
Tel: (202) 849-8399
Emails: jsu@biologicaldiversity.org
           hcrystal@biologicaldiversity.org
*Admitted Pro Hac Vice*

Tala DiBenedetto (NY Bar No. 5836994)
P.O. Box 371
Oceanside, NY 11572-0371
Tel: (718) 874-6734, ext. 555
Email: tdibenedetto@biologicaldiversity.org
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
### TUCSON DIVISION

| | |
|---|---|
| Center for Biological Diversity; and Conservation CATalyst, | Case No. CV-25-00365-TUC-AMM (JEM) |
| *Plaintiffs*, | **MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| Kristi Noem, in her official capacity as Secretary of Homeland Security; U.S. Department of Homeland Security; and U.S. Customs and Border Protection, | (Oral Argument Requested) |
| *Defendants*. | |

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .......................................................................................................ii

**TABLE OF AUTHORITIES** ............................................................................................. iii

**MOTION FOR SUMMARY JUDGMENT** ....................................................................1

**MEMORANDUM OF POINTS AND AUTHORITIES** ...............................................1

  **INTRODUCTION** ..........................................................................................................1

  **STATUTORY FRAMEWORK** ......................................................................................3

  **FACTUAL BACKGROUND** ..........................................................................................4

  **ARGUMENT** ..................................................................................................................6

    I.    The Waiver and IIRIRA § 102(c) Violate the Separation of Powers and Non-Delegation Doctrine. ..................................................................................................6

      A.   IIRIRA § 102(c) impermissibly delegates quintessential legislative authority to the Executive. ............................................................................................6

      B.   In view of Congress's delegation of boundless discretion to the Secretary to decide which laws to comply with and which to disregard, IIRIRA § 102(c) fails the intelligible principle test. ...................................................................9

    II.   The Waiver and IIRIRA § 102(c) Violate the Presentment Clause. .................15

  **CONCLUSION** .............................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Border Infrastructure Envtl. Litig. v. US Dep't of Homeland Sec.,* 915 F.3d 1213 (9th Cir. 2019) ...................................................................................................13

*Clinton v. City of New York*, 524 U.S. 417 (1998) ...............................................15, 16, 17

*Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218 (D.D.C. 2019) ...........12

*Defenders of Wildlife v. Chertoff*, 527 F. Supp. 2d 119 (D.D.C. 2007) ..........................13

*Dep't of Transp. v. Ass'n of Am. R.R.*, 135 S. Ct. 1225 (2015) ....................................................................................................9

*FCC v. Consumers' Rsch*, Nos. 24-354, 24-422, 2025 U.S. LEXIS 2498 (Jun. 27, 2025) ...........................................................................................................3, 10, 13, 15

*Friends of the Earth, Inc. v. Laidlaw Envt'l Services, Inc.*, 528 U.S. 167 (2000) .............6

*Gundy v. United States*, 588 U.S. 128 (2019) ......................................................6, 8, 9, 15

*In re Border Infrastructure Envtl. Litig.*, 284 F.Supp. 3d 1092 (S.D. Cal. 2018)............13

*Indus. Union Dep't AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607 (1980) ...............8, 13

*INS v. Chadha*, 462 U.S. 919 (1983) .......................................................................8, 15, 17

*Jarkesy v. SEC,* 34 F. 4th 446 (5th Cir. 2022) ...................................................................8

*Marshall Field & Co. v. Clark*, 143 U.S. 649 (1892) .........................................................8

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) ........................................................13

*Mistretta v. US*, 488 U.S. 361 (1989) ..............................................................................9, 14

*Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846 (9th Cir. 2004)...............6

*Oppenheimer v. Mitchell*, 135 F.4th 837 (9th Cir. 2025)....................................................1

*Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935)........................................................13

*Rodriguez v. United States*, 480 U.S. 522 (1987)...............................................................7

*SEC v. Jarkesy,* 603 U.S. 109 (2024) ................................................................................8

*Touby v. United States*, 500 U.S. 160 (1991) ..................................................................14

*TVA v. Hill*, 437 U.S. 153 (1978) .......................................................................................7

*V.O.S. Selections v. Trump*, Nos. 2025-1812, 2025-1813, 2025 U.S. App. LEXIS 14318 (June 10, 2025) ...........................................................................................................14

*V.O.S. Selections v. United States*, 772 F. Supp. 3d 1350 (2025) ...................................14

*Wayman v. Southard*, 23 U.S. 1 (1825)..............................................................................6

*Whitman v. Am. Trucking Assn's*, 531 U.S. 457 (2001)................................................9, 11

**Constitutional Provisions**

U.S. Const., Art. I, § 1 ...............................................................................6, 15

U.S. Const., Art. I, § 7 ...............................................................................3, 15

**Statutes**

16 U.S.C. § 1531 *et seq.* .................................................................................2

25 U.S.C. § 3001 *et seq.* .................................................................................5

42 U.S.C. § 4321 *et seq.* .................................................................................4

IIRIRA § 102, As Amended (codified at 8 U.S.C. § 1103 note)

   IIRIRA § 102(a) ...............................................................................3, 10, 12

   IIRIRA § 102(c) ......................................................................................passim

   IIRIRA § 102(c)(2) .........................................................................................4

Pub. L. 89-665 ..................................................................................................4

Pub. L. 104-208, Div. C, 110 Stat. 3009-546, as amended (codified at 8 U.S.C. § 1103 note) .................................................................................................2

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................1

LRCiv 56.1 ........................................................................................................1

**Federal Register Notices**

90 Fed. Reg. 23946 (June 5, 2025)................................................................1, 2

90 Fed. Reg. 8327 (Jan. 29, 2025)....................................................................4

## APPENDIX

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, §102, 110 Stat. 3009-554 (1996), *as amended* (codified at 8 U.S.C. §1103 note)

## MOTION

Pursuant to Fed. R. Civ. P. 56(c) and LRCiv 56.1, Plaintiffs Center for Biological Diversity and Conservation CATalyst ("Plaintiffs") move for summary judgment. There are no genuine issues of material fact in dispute, and Plaintiffs are entitled to judgment as a matter of law. *See*, *e.g.*, *Oppenheimer v. Mitchell*, 135 F.4th 837, 851 (9th Cir. 2025). This motion is supported by Plaintiffs' Memorandum of Points and Authorities, Statement of Facts, and supporting declarations, as filed herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

## <u>INTRODUCTION</u>

The San Rafael Valley, known as the beating heart of biodiversity in the greater Sky Islands region, is one of the last significant wildlife corridors on the Arizona-Mexico border. For the rare and culturally sacred endangered jaguar, the Valley serves as the most important remaining passageway into Mexico to find breeding partners and resources critical for its continued existence in the United States. The Valley also provides crucial connectivity for other iconic wildlife, including black bear and endangered ocelot.

This vital corridor now faces the threat of permanent closure and destruction through the Department of Homeland Security's ("DHS") new project to construct a 30-foot-tall border wall and roads cleaving through 41 miles of southeastern Arizona, including the Valley ("the Project"). Moreover, rather than ensure informed decision-making and minimize these threats by complying with the nation's bedrock environmental laws, DHS Secretary Kristi Noem has unconstitutionally waived all compliance with dozens of federal laws for the Project. 90 Fed. Reg. 23946 (June 5, 2025) ("the Waiver").

Secretary Noem issued the capacious Waiver pursuant to § 102(c) of the Illegal

Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which purports to grant the DHS Secretary legislative authority to "waive all legal requirements" that she determines, in her "sole discretion," are "necessary to ensure expeditious construction" of physical barriers in the borders' vicinity. Pub. L. 104-208, Div. C, 110 Stat. 3009-546, as amended (codified at 8 U.S.C. § 1103 note).[1] In exercising law-making judgment on subject matters completely unmoored to DHS's security expertise, Secretary Noem unilaterally invalidated the vital protections Congress safeguarded through 34 environmental, public health, and religious freedom laws—as well as all tribal, state, and local laws deriving therefrom—that apply to the Project, including, for example, the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq*., which would have mandated the Secretary evaluate the Project's impacts on imperiled species and ensure the Project does not threaten their existence. 90 Fed. Reg. 23946-47.

As discussed below, the Waiver—and IIRIRA § 102(c) generally—corrupts the carefully-wrought architecture buttressing the country's tripartite system of government. The Constitution vests in Congress alone the distinct and exclusive authority to establish the relative priority of national policies and make law for the country. Yet IIRIRA § 102(c) impermissibly endows an unelected Executive official with paradigmatic legislative authorities: (1) the *policymaking* power to independently pick and choose which of the thousands of statutorily-protected interests should be discarded by nullifying laws in the name of border wall construction, violating the non-delegation doctrine enshrined in

---

[1]     All subsequent undesignated statutory references herein refer to IIRIRA, as amended (codified at 8 U.S.C. §1103 note), unless otherwise designated. See Appendix for statutory text.

Article I, § 1 of the Constitution; and (2) the *lawmaking* power to independently repeal the statutes securing those interests without complying with bicameralism and presentment procedures, violating the Presentment Clause. U.S. Const. Art. I, § 7. The Constitution forbids such divestment of legislative power away from Congress, which does violence to the foundational separation of powers and consequentially cripples the people's capacity to hold someone accountable for the national policy decisions of an unelected Executive agent. Recently, the Supreme Court breathed new life into the non-delegation doctrine by sharpening the line between permissible and impermissible delegations, *FCC v. Consumers' Rsch*, Nos. 24-354, 24-422, 2025 U.S. LEXIS 2498 (Jun. 27, 2025) ("*FCC*")—with the IIRIRA waiver authority firmly falling into the latter camp.

Plaintiffs urge the Court to grant this motion, strike down IIRIRA § 102(c), and vacate the Waiver. Because construction will soon be underway, Statement of Facts ("SOF") ¶ 6, Plaintiffs also respectfully request oral argument and resolution of this action as expeditiously as practicable.

## **STATUTORY FRAMEWORK**

IIRIRA directs the DHS Secretary to install physical barriers in the "vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." IIRIRA § 102(a). To construct the barriers, Congress also conferred on the Secretary a sweeping waiver power in IIRIRA § 102(c)—the disputed provision here—which provides:

**(c)Waiver.—**
> **(1) In general.—**Notwithstanding any other provision of law, the Secretary of Homeland Security shall have the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction

of the barriers and roads under this Section. Any such decision by the Secretary shall be effective upon being published in the Federal Register.

Nowhere else in the statute does Congress furnish further criteria to guide the Secretary's decision-making on which "legal requirements" to repeal. Congress also radically curtailed the Judiciary's check on the Secretary's waiver decisions by constricting legal challenges to only constitutional claims, isolating those claims to federal district court, barring state court review, and entirely eliminating ordinary federal circuit court review of district court decisions, leaving the Supreme Court's discretionary review the sole avenue for appeal. *Id.* § 102(c)(2).

## **FACTUAL BACKGROUND**

Responding to President Trump's declaration of a "national emergency at the southern border," 90 Fed. Reg. 8327 (Jan. 29, 2025), SOF ¶ 1, Secretary Noem issued the Waiver pursuant to IIRIRA § 102(c) and unilaterally denied the protections and rights safeguarded by 34 separate federal laws—and all "tribal, state, and local laws deriving therefrom"—that would otherwise apply to 41 miles of border wall infrastructure that cleaves through Arizona's San Rafael Valley and Nogales in the U.S. Border Patrol Tucson Sector. SOF ¶¶ 2-4.

These waived laws range widely and include, among many others: wildlife conservation and environmental statutes, like the ESA and the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"); public health and safety statutes, like the Clean Water Act, 33 U.S.C. § 1251 *et seq.*; cultural and historic preservation statutes, like the National Historic Preservation Act, Pub. L. 89-665; and statutes designed to protect Indigenous rights and culture, like the Native American Graves Protection and

Repatriation Act, 25 U.S.C. § 3001 *et seq*. SOF ¶ 3.

The consequences of the Waiver are profound. For example, the Secretary's abrogation of the ESA allows DHS to entirely ignore—and fail to otherwise mitigate for—the impacts of border wall construction on myriad species, through destruction of wildlife habitat and movement corridors, as well as cascading impacts to ecosystems from increased anthropogenic noise, artificial light, and damage to watersheds. SOF ¶¶ 7-11. The proposed Project includes the erection of 27 miles of new 30-foot-tall bollard walls through the San Rafael Valley, sprawling west from the Patagonia Mountains to the Coronado National Memorial; if completed, the Project will create Arizona's longest unbroken stretch of border wall amounting to 100 miles. SOF ¶¶ 3-4. While wildlife can generally move through existing vehicle barriers marking the border in this area, these massive new bollard walls will be impermeable for most wildlife and halt their essential cross-border movement to access food, habitat, mates, and other necessary resources. SOF ¶¶ 7-11. Indeed, the Project's closure of this vital corridor could lead to the extirpation of endangered jaguars in the entire United States and threaten the recovery of endangered ocelots. SOF ¶¶ 8-11. The U.S. extirpation of jaguars will cause especially unique harms to Native American and other communities for whom jaguars continue to hold great historical, cultural, and spiritual significance. Chairman Austin Nunez Declaration ¶¶ 5,7.

Similarly, by waiving laws like NEPA, the Secretary evades mandates to consider reasonable alternatives and analyze and disclose the wall's adverse impacts on border communities, as well as to facilitate substantive public input. The Waiver also overrides state, local, and tribal interests by repealing any non-federal laws in any way deriving from the 34 federal laws waived, raising federalism concerns.

## ARGUMENT[2]

**I.    The Waiver and IIRIRA § 102(c) Violate the Separation of Powers and Non-Delegation Doctrine.**

Because IIRIRA delegates core legislative power to the DHS Secretary, allowing per her "sole discretion" to pick and choose which laws to repeal to expedite border construction, it could only pass the Supreme Court's "intelligible principle" test if the statute provides clear guidance and criteria for how that legislative power of choice is to be exercised. Because IIRIRA is devoid of any such guidance, § 102(c) is unconstitutional.

**A.    IIRIRA § 102(c) impermissibly delegates quintessential legislative authority to the Executive.**

The Constitution provides that "[a]ll legislative Powers" are vested in Congress alone. U.S. Const., art. I, § 1. The non-delegation doctrine enforces this separation of powers by barring Congress from "transfer[ring] to another branch 'powers which are strictly and exclusively legislative.'" *Gundy v. United States*, 588 U.S. 128, 128 (2019) (quoting *Wayman v. Southard*, 23 U.S. 1 (1825)). This includes the fundamental legislative power of "establish[ing]" the "relative priority [of policies] for the Nation," a

---

[2]    Plaintiffs have Article III standing. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Services, Inc.*, 528 U.S. 167, 180-81 (2000). Plaintiffs' declarations detail their members' myriad interests injured by the Waiver, which its invalidation will redress. *See* Chris Bugbee Decl.., ¶¶5-19 (professional, recreational, aesthetic, spiritual, scientific and cultural interests in ecology, geography, jaguars, and ocelots); Laiken Jordahl Decl., ¶¶3-12; Sky Jacobs Decl., ¶¶3-20; and Russell McSpadden Decl., ¶¶2-10); Neils Decl. ¶¶ 14-18, 29-30. These interests, and the threats that the Project poses to them, are more than sufficient to confer standing. *See, e.g., Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2004) (injury in fact is shown through "an aesthetic or recreational interest in a particular place, or animal . . . species" if "impaired by defendant's conduct").

function that is the "exclusive province of the Congress." *TVA v. Hill*, 437 U.S. 153, 194 (1978).

Here, the Waiver and IIRIRA § 102(c) run roughshod over these constitutional limitations. In particular, IIRIRA § 102(c) squarely places the decision-making power of weighing barrier construction against all other statutorily protected interests in the "sole discretion" of the DHS Secretary. Specifically, IIRIRA impermissibly delegates to the Executive the quintessentially legislative power of prioritizing competing public policies through the "authority to waive" any laws that the Secretary "determines necessary" for expeditious wall construction. § 102(c)(1). This sweeping provision grants the Executive the hallmark legislative functions of: (1) considering the relative prioritization of expeditiously constructing the border wall against the universe of all other legally protected public and private interests, including those which fall entirely outside the Secretary's zone of expertise (*e.g.*, civil rights, public health, environmental) and lawful jurisdiction (interests protected by state, local, and tribal laws); and (2) then making the major policy decision of choosing which laws to disregard—and which to comply with— in pursuing border barrier construction.

In short, Congress has abdicated to the Secretary the power exclusively vested to the Legislature to "[d]ecid[e] what competing values will or will not be sacrificed to the achievement of a particular objective," which is "the very essence of *legislative choice*." *Rodriguez v. United States*, 480 U.S. 522, 526 (1987) (emphasis added). It is constitutionally untenable for an Executive official to unilaterally dispense with any and all safeguards and rights already established by Congress (as well as state, local, and tribal governments) in other statutes; doing so transfers to the Executive the paradigmatic

legislative power of "alter[ing] the legal rights, duties, and relations of persons." *INS v. Chadha*, 462 U.S. 919, 952 (1983). *See also Indus. Union Dep't AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 685 (1980) (Rehnquist, J., concurring)("important choices of social policy" must be made by Congress and not delegated to the Executive).

To be sure, Congress itself could have jettisoned every legal requirement that might otherwise apply to border wall construction by waiving all laws that would otherwise apply to the border wall. But Congress declined to do so, thereby avoiding responsibility for such a politically fraught result. Instead, it punted the politically difficult decision of weighing border construction against all other protected interests to a politically unaccountable Executive agent.

However, this is precisely what the Constitution forbids, amounting to the "delegation of power to make the law, which . . . cannot be done." *Marshall Field & Co. v. Clark*, 143 U.S. 649, 693-94 (1892) (citation omitted). This case is therefore analogous to the Fifth Circuit's ruling in *Jarkesy v. SEC*, where the Court found Congress's delegation to an agency to choose which actions it would adjudicate and which it would assign to Article III courts amounted to an unconstitutional delegation of "a power that Congress uniquely possesses." 34 F. 4th 446, 462 (5th Cir. 2022), *aff'd on other grounds*, 603 U.S. 109 (2024).

So too here. Rather than deciding *itself* how to rank the importance of border wall construction against the universe of other interests protected by other laws, Congress abdicated that legislative power to the DHS Secretary, amounting to constitutional infirmity. *See also Gundy*, 588 U.S. at 136 (noting that "we *would* face a nondelegation question" if the statutory provision at issue had "grant[ed] the Attorney General plenary

Motion for Summary Judgment and Supporting Memorandum                    CV-25-00365-TUC-AMM (JEM)

power to determine SORNA's applicability to pre-Act offenders—to require them to register, or not, as she sees fit, and to change her policy for any reason and at any time" (emphasis added)).

Ultimately, what is at stake when Congress violates the separation of powers is accountability to the citizenry. IIRIRA's unlawful delegation prevents the public from ensuring responsive and responsible lawmaking through their elected representatives— both (1) creating "opportunities for finger-pointing" over adverse policies that "threaten to disguise responsibility for [policy] decisions," *id*. at 156 (Gorsuch, J., dissenting) (internal quotations omitted), and (2) enabling both the Executive and Congress to "wield power without owning up to the consequences." *DOT v. Ass'n of Am. R.R.*, 575 U.S. 43, 57  (2015) (Alito, J., concurring). The Constitution does not permit such a result.

      **B.**    **In view of Congress's delegation of boundless discretion to the Secretary to decide which laws to comply with and which to disregard, IIRIRA § 102(c) fails the intelligible principle test.**

In view of the legislative power underlying IIRIRA § 102(c), the waiver authority fails the Supreme Court's long-standing intelligible principle test. While affirming that Congress cannot altogether forfeit its legislative powers to the Executive, the Court has explained that Congress may "obtain[] the assistance of its coordinate Branches," but only if it "lay[s] down by legislative act an intelligible principle" which "clearly delineates the general policy" and "boundaries of th[e] delegated authority." *Mistretta v. US*, 488 U.S. 361, 372-73 (1989) (internal quotations omitted). However, this power has clear limits, and "the degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred." *FCC,* 2025 U.S. LEXIS 2498, at *19 (quoting *Whitman v. Am. Trucking Assn's*, 531 U.S. 457, 474-75 (2001)). In other words, the strictness of

the intelligible principle test tightens and the level of agency deference permitted recedes as the breadth of the purported delegated power expands.

In this case, the scope of the delegated power is astonishing. Thus, because there is no "one size fits all" with respect to the intelligible principle test, *id.* at *69 (Gorsuch, J., dissenting), the wide girth of IIRIRA's waiver power demands a taut corset of Congressional guidance. In particular, IIRIRA § 102(c) grants the Secretary *carte blanche* power to (1) unilaterally repeal the application of *any and all laws*—including, as was the case here, state, local, and tribal laws that derive from the waived federal laws, SOF ¶ 2, (2) in order to pursue *any kind* of border construction (such as infrastructure that may be only tenuously connected to deterring illegal entry), § 102(a) and (c), (3) at *any* time and *in perpetuity* (without any sunset date), (4) *anywhere* within the border's "vicinity," § 102(a)—which, per CBP's purview, SOF ¶ 12, could be anywhere within 100 miles of all U.S. borders (including, *e.g.*, New York City or San Francisco or the whole of Hawaii, given their proximity to the country's marine borders). Thus, where as here Congress presented an unclear and breathtakingly broad set of circumstances under which the Secretary may exercise her delegated power, mandating muscular bounds on that delegation are necessary to satisfy the intelligible principle test.

However, it is simply impossible to identify a meaningful intelligible principle here. IIRIRA § 102(c) states that the Secretary "shall have the authority to waive all legal requirements [that] such Secretary, in such *Secretary's sole discretion*, determines *necessary to ensure expeditious construction* of the barriers and roads under this section." (Emphasis added). But Congress provides absolutely no guidance to instruct how the Secretary should decide whether compliance with every single law in the U.S. code or

none of them at all should be waived to "ensure expeditious construction." § 102(c). Congress proffered no factors, standards, criteria, or any other grounds on which the Secretary should base a waiver determination. Congress did not even mandate that the Secretary seek expert guidance and input through fact-finding hearings, public comment processes, intra-agency consultation, or other mechanisms to inform the Secretary's waiver decision of which laws would take more or less time to comply with. *Cf. Whitman*, 531 U.S. at 475 (constitutional delegation as Congress required agency to undertake an extensive technical expert consultation and extensive public administrative rulemaking process for agency's setting of air pollutant standards).

Neither the term "necessary" nor "expeditious" act as meaningful boundaries for waiving laws, because they are defined exclusively by whatever the Secretary desires them to mean in her "sole discretion." As illustrated by the vast number of laws that have been waived for no apparent rhyme or reason, let alone explanation, the term "necessary" has a plethora of possible meanings, and none that bind the Secretary's waiver power in a way that guides discretion. The Secretary has no expertise in the operation of the numerous laws she is called to consider waiving and need not even consult the agencies with such expertise. On what "intelligible" basis is the Secretary making judgments that waiving any of these laws is actually "necessary"? The reality is that the Secretary has been given leeway to discard duly enacted laws at whim, with her "sole discretion" being the only guidepost. That is the furthest conceivable thing from an "intelligible principle."

The term "expeditious" is equally devoid of any guardrails. For example, there are no time limitations to determine whether the enforcement or application of a particular federal, state, local, or tribal law must be waived to ensure "expeditious" construction of

a barrier or a road. Similarly, there are no constraints at all on how the Secretary is to evaluate whether compliance with a particular environmental, civil rights, criminal or other statute—the vast majority of which the Secretary and DHS have no expertise with—would impact construction timing. While DHS may possess expertise in areas of immigration and border security, the waiver decision requires considering the universe of all other statutorily-protected public and private interests. Because the Secretary and her Department have no expertise or even experience in the vast array of interests, the Secretary has no discernible means of assessing whether those interests can be met *while* border activities and construction may proceed.

Nor does the mere objective of building barriers, found in both IIRIRA §§ 102(a) and (c), provide any guidance to the precise authority challenged here: the Secretary's decision-making process on which laws to bypass in favor of border wall construction. The fact that DHS is tasked with building infrastructure to deter illegal entry in no way informs or prescribes how the Secretary is able to decide which protected interests to keep or discard to achieve this goal.[3]

---

[3]    In a prior case involving a similar constitutional challenge over a different project, the D.C. district court concluded that §102(a) provided the general policy of an intelligible principle through the general purpose of building barriers to deter illegal entry, while § 102(c) provided sufficient boundaries of an intelligible principle through the term "necessary to ensure expeditious construction." *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 248 (D.D.C. 2019), *cert. denied*, 141 S. Ct. 158 (2020) ("*McAleenan*"). The district court misunderstood the nature of the delegation authority being challenged. The specific delegation at issue is picking and choosing which statutorily protected interests to discard by repealing application of otherwise applicable federal, state, and local laws—necessitating some type of criteria, principles, or standards to inform the Secretary's decision-making. Neither §§ 102(a) nor (c) provide that type of prescriptive guidance the intelligible principle test demands. To the contrary, the Supreme Court has held that broad and sweeping statements about "a statute's 'basic purpose' are [] inadequate to overcome the words of its text regarding the specific issue [the delegation

---

Motion for Summary Judgment and Supporting Memorandum          CV-25-00365-TUC-AMM (JEM)

At base, in shifting legislative power to the DHS Secretary, Congress failed to fulfill its basic obligation to at least set out *some* criteria, standards, or rules the Secretary should use to adjudicate whether it is necessary to sweep aside a statutorily protected interest and thus repeal existing law, and how to weigh the consequences against the need to proceed immediately with border wall projects.[4] If the intelligible principle test is to mean anything, it must mean that a total absence of Congressional guidance is impermissible under the Constitution. That is why the Supreme Court struck down a similarly unbridled delegation of legislative power when Congress offered no guidance on an authority to prohibit the transportation in interstate commerce of petroleum and related products. *Panama Refining Co. v. Ryan*, 293 U.S. 388, 405-05 (1935). It is also

---

encompassed in the §102(c) waiver authority] under consideration." *Mertens v. Hewitt Associates*, 508 U.S. 248, 261 (1993) (emphasis deleted). Other judges have upheld IIRIRA border wall waiver decisions, similarly misconstruing the nature of the delegated authority and the dearth of Congressional guideposts at issue. *See*, *e.g.*, *In re Border Infrastructure Envtl. Litig*., 284 F.Supp. 3d 1092 (S.D. Cal. 2018) (appealed on non-constitutional grounds, 915 F.3d 1213 (9th Cir. 2019)); *Defenders of Wildlife v. Chertoff*, 527 F. Supp. 2d 119 (D.D.C. 2007) (on which the *McAleenan* ruling heavily relied). In fact, the Ninth Circuit Court reaffirmed that IIRIRA §102(a) is "most plausibly read as a *broad grant of authority* to build border infrastructure," 915 F.3d 1213 at *22 (emphasis added), foreclosing the notion that §102(a) provides any bookends of a meaningful intelligible principle.

[4] The dearth of any intelligible principle is also evident in the absence of a judicial standard that a court could apply—even assuming the existence of judicial review of arbitrary applications of IIRIRA, which Congress eliminated—to determine whether the Secretary acted within § 102(c)'s bounds. Where an intelligible principle exists, it "ensures that courts . . . reviewing the exercise of delegated legislative discretion will be able to test that exercise against ascertainable standards." *Indus. Union Dep't AFL-CIO*, 448 US. at 686 (Rehnquist, J., concurring); *see also FCC*, 2025 U.S. LEXIS 2498, at *20 (Congress should provide a "sufficient standard to enable both the courts and the public to ascertain whether the agency has followed the law") (internal citations omitted). Here, as discussed, by failing to even define "necessary" and "expeditious," Congress provided no meaningful standards to judge the Secretary's exercise of the essentially boundless § 102(c) waiver authority.

Motion for Summary Judgment and Supporting Memorandum                CV-25-00365-TUC-AMM (JEM)

1  why the Court of International Trade recently found unconstitutional the President's

2  interpretation of the International Emergency Economic Powers Act—which he claims

3  allows him to unilaterally impose whatever global tariff rates he chooses—explaining that

4  the term "to regulate . . . importation" does not provide a meaningful intelligible principle

5

6  to cabin the President's authority. *V.O.S. Selections v. United States*, 772 F. Supp. 3d 1350

7  (2025), 2025 Ct. Intl. Trade LEXIS 67, at *35-36 (May 28, 2025) (decision stayed pending

8  appeal at the Federal Circuit, *V.O.S. Selections v. Trump*, Nos. 2025-1812, 2025-1813,

9  2025 U.S. App. LEXIS 14318 (June 10, 2025)). The outcome should be the same here.[5]

10

11       Moreover, this paucity of congressional instruction is inexcusable, especially in

12  light of Congress's history of providing robust intelligible principles for similarly broad

13  delegations.[6] Absent in the § 102(c) delegation is substantive guidance that exists for past

14  constitutional delegations, such as: (1) enumerated factors and criteria to consider when

15  weighing competing interests, *see Touby v. United States*, 500 U.S. 160, 166-67 (1991)

16

17  (requirement to consider at least three of eight codified factors in setting drug designations

18  constituted intelligible principle);  (2) express limitations on the kinds of factors that can

19  be taken into account in making a decision, s*ee Mistretta*, 488 U.S. at 374-75 (explicit

20

21

22  [5]     *See also* Brief for the Chamber of Commerce of the United States of America and
the Consumer Technology Association as Amici Curiae Supporting Appellees, *V.O.S.*
23  *Selections*, 772 F. Supp. 3d 1350, No. 25-1812, Dkt. No. 108 (urging the appeals Court to
24  affirm on non-delegation grounds).
[6]     IIRIRA §102(c) raises delegation concerns that implicate a far broader set of
25  interests than those at issue in prior cases and differ not only in degree but of kind.
Specifically, the waiver authority is not contained to one statute but involves all federal,
26  state, tribal and local laws; lacks meaningful Congressional guidance to inform decision-
27  making; and is immunized from ordinary judicial scrutiny for arbitrary exercises of
delegated authority, further exacerbating the separation-of-powers problem.
28

restrictions on range of minimum and maximum sentences, grade of offense, nature and degree of harm, and demographics of offender in sentencing guidelines constituted intelligible principle); or (3) specific programmatic outcomes guiding how to set fees designed to fund such programs, *see FCC*, 2025 U.S. LEXIS 2498, at *27-38 (qualifications concerning populations, types of services and programs covered by telecommunications fee constituted intelligible principle). These examples both demonstrate that Congress *can* design necessary guardrails and highlight that Congress failed to do so here. Thus, the Waiver and IIRIRA § 102(c) are unconstitutional.

## II.      The Waiver and IIRIRA § 102(c) Violate the Presentment Clause.

The authority to legislate is entrusted solely to Congress. U.S. Const. art I, §§ 1, 7; *Clinton v. City of New York*, 524 U.S. 417, 438 (1998). This includes the "[a]mendment and repeal of statutes, no less than enactment, [all of which] must conform with" the bicameralism and presentment requirements of Article I, *INS v. Chadha*, 462 U.S. 919, 954 (1983)—which the Framers considered the "bulwarks of liberty." *Gundy*, 139 S. Ct. at 2134 (Gorsuch, J., dissenting).

But IIRIRA § 102(c) blows right through this bulwark, granting the Secretary the legislative authority to unilaterally repeal any existing law without complying with the Constitution's dual presentment and bicameralism procedures. In doing so, it surpasses even Congress's own law-making power. In particular, the Secretary's Waiver functions as partial repeals of, or amendments to, the underlying laws being waived. Thus, when she waives thirty-four federal laws, she is effectively adding a new provision stating that the laws do not apply when she says so. Such an amendment alters each of those statutes' "legal force or effect" as applied to the construction of the Waiver's border barriers.

*Clinton*, 524 U.S. at 438. And any attempt to minimize the constitutional implications of § 102(c) waivers on the grounds that they narrowly apply to individual border projects must be rejected, because the cumulative effect of the § 102(c) Waiver amounts to significant repeals of dozens of underlying statutes for hundreds of miles of activities.

Specifically, it bears emphasizing that § 102(c) waivers now apply to nearly half of the entire 2,000-mile U.S.-Mexico border, with respect to nearly 50 federal laws and innumerable state, local, and tribal laws. SOF ¶ 14. Taken together, the Secretary's unilateral decision to issue the Waiver, past waivers, along with new § 102(c) waivers that are sure to come, effectively repeal the application of an ever-increasing number of federal statutes as applied to an ever-expanding number of projects. As a concrete example, the existing § 102(c) waivers have, collectively, repealed significant swaths of the ESA, with the "both legal and practical effect" of denying the Act's vital protections to nearly 100 endangered and threatened species at the borderlands. SOF ¶ 13; *Clinton*, 524 U.S. at 438. Indeed, the fact that there is not a single border wall project that Secretary Noem has authorized *without* waiving applicable federal and state environmental and related laws itself strongly indicates that, in practice, there is no balancing of interests occurring, but rather that DHS is just blindly prioritizing border wall construction over compliance with any and all other laws—precisely the kind of legislating the Constitution assigns exclusively to Congress.

Indeed, the § 102(c) waiver power is not materially distinguishable from the unconstitutional power granted to the President by the Line Item Veto Act. *See Clinton*, 524 U.S. 417. That Act granted the President the unilateral authority to strike portions of duly enacted statutes concerning statutory spending and taxes, which effectively permitted

the President to "amend" the underlying laws. *Id*. at 438, 448-49. But the Supreme Court concluded the Constitution prohibits such an Executive branch power, just as it prohibits the executive amendment of an enacted law. Following that logic, it is evident that the Waiver authority at issue here runs afoul of the same constitutional limit, since it gives the Executive branch the power to amend and repeal existing laws.

In fact, the Secretary's waiver discretion is far broader than the President's cancellation authority invalidated in *Clinton*. There, Congress at least provided guardrails for the Line Item Veto authority, which could apply only to specific spending and tax items and was required to meet certain criteria. *Clinton*, 524 U.S. at 436. Congress also retained the power to reject the vetoes. *Id.* By contrast, here, the Secretary may waive *any* laws without *any* guidance, and Congress has *no* authority to override the waiver decision. This effectively grants the Executive exclusive lawmaking power, which is constitutionally impermissible. *See also Chadha*, 462 U.S. at 954.

Indeed, Congress has bestowed on the Secretary even *more power than Congress itself possesses*. While Congress can only amend or repeal a law through an arduous Article I process, the Secretary operates under none of these "finely wrought" constitutional constraints, but rather has the power, free from all non-constitutional judicial review, to repeal laws. *Clinton*, 524 U.S. at 439.

## **CONCLUSION**

The result of the Secretary's unconstitutional Waiver is the quiet and fatal removal of one of America's most iconic species. For the foregoing reasons, Plaintiffs respectfully urge the Court to grant summary judgment as expeditiously as practicable. Plaintiffs also request oral argument.

DATED: July 16, 2025                    Respectfully submitted,

*/s/ Anchun Jean Su*
ANCHUN JEAN SU (DC Bar No. CA285167)
HOWARD M. CRYSTAL (DC Bar No. 446189)
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street N.W., Suite 1300
Washington, D.C. 20005
Telephone:    (202) 849-8399
Emails:       jsu@biologicaldiversity.org
              hcrystal@biologicaldiversity.org
*Admitted Pro Hac Vice*


TALA    DIBENEDETTO   (NY   Bar   No.
5836994)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 371
Oceanside, NY 11572-037
Telephone: (718) 874-6734, ext. 555
Email: tdibenedetto@biologicaldiversity.org
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*