BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

ALEXANDER J. YUN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
202-674-0255
Alex.Yun@usdoj.gov
*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Center for Biological Diversity, *et. al.*,<br><br>                Plaintiffs,<br><br>   v.<br><br>Kristi Noem, in her official<br>Capacity as Secretary of Homeland<br>Security, *et al.*,<br><br>                Defendants. | 4:25-cv-00365-AMM-TUC<br><br>**DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT AND<br>OPPOSITION TO PLAINTIFFS'<br>MOTION FOR SUMMARY<br>JUDGMENT** |

Pursuant to Rule 56, Fed. R. Civ. P., Defendants Kristi Noem, in her official capacity as Secretary of Homeland Security, the U.S. Department of Homeland Security, and U.S. Customs and Border Protection, move for summary judgment on all counts brought by Plaintiffs Center for Biological Diversity and Conservation CATalyst. There is no genuine issue as to any material fact, and Defendants are entitled to judgment in their favor as a matter of law.

This motion is supported by the following Memorandum of Points and Authorities, as well as Defendants' Separate Statement of Facts in Support of Motion for Summary Judgment and Defendants' Controverting Statement of Facts, which are filed contemporaneously herewith pursuant to LRCiv. 56.1(a) and (b).

i

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

I.    Statutory Framework .................................................................................. 2

II.   The Secretary's Exercise of Waiver Authority ......................................... 3

III. Procedural History ...................................................................................... 5

IV. Standard of Review ...................................................................................... 5

ARGUMENT .......................................................................................................... 5

I.    The Waiver Provision Does Not Violate the Non-Delegation Doctrine ................. 5

      a.    The Waiver Provision Does Not Unconstitutionally Delegate Legislative
            Authority to the Executive. ............................................................. 7

      b.    Congress Provided an Intelligible Principle to Guide the Secretary's Waiver
            Authority. ...................................................................................... 10

            i.    Congress Established a General Policy in the IIRIRA ................... 11

            ii.   Congress Set Boundaries on the Secretary's Authority ................ 12

II.   The Waiver Provision Does Not Violate the Presentment Clauses. ...................... 14

CONCLUSION ..................................................................................................... 17

1

2

# TABLE OF AUTHORITIES

**Cases**                                                                      **Pages**

3

*Acree v. Republic of Iraq,*

4
   370 F.3d 41 (D.C. Cir. 2004) ..................................................................... 16

5

*American Power & Light Co. v. SEC,*

6
   329 U.S. 90 (1946) ..................................................................................... 10

7

*Celotex Corp. v. Catrett,*

8
   477 U.S. 317 (1986) ..................................................................................... 5

9

*Clinton v. City of New York,*
   524 U.S. 417 (1998) ............................................................................. 14, 17

10

11

*County of El Paso v. Chertoff,*
   No. 08-196, 2008 WL 4372693 (W.D. Tex. 2008).............................. 4, 6, 14

12

13

*Ctr. for Biological Diversity v. McAleenan,*
   404 F. Supp. 3d 218 (D.D.C. 2019) .......................................................*passim*

14

15

*Defenders of Wildlife v. Chertoff,*
   527 F. Supp. 2d 119 (D.D.C. 2007) .......................................................*passim*

16

17

*Dep't of Navy v. Egan,*
   484 U.S. 518 (1988) ..................................................................................... 9

18

19

*FCC v. Consumers' Rsch.,*
   145 S. Ct. 2482 (2025) .......................................................... 6, 7, 10, 11

20

21

*Gundy v. United States,*
   588 U.S. 128 (2019) ..................................................................................... 6

22

23

*In re Border Infrastructure Envtl. Litig.,*
   284 F. Supp. 3d 1092 (S.D. Cal. 2018)................................................. 4, 6, 11

24

25

*Knauff v. Shaughnessy,*
   338 U.S. 537 (1950) ................................................................................... 10

26

27

*Loving v. United States,*
   517 U.S. 748 (1996) .............................................................................. 9, 10

28

*Mistretta v. U.S.*,
   488 U.S. 361 (1989) .................................................................................................... 7

*N. Am. Butterfly Ass'n v. Nielsen*,
   No. 1:17-cv-02651, 2019 WL 634596 (D.D.C. Feb. 14, 2019) ..................................... 4

*NSA Telecomm. Records Litig. v. AT&T Corp.*,
   671 F.3d 881 (9th Cir. 2011) ..................................................................................... 16

*Republic of Iraq v. Beaty*,
   556 U.S. 848 (2009) ................................................................................................. 15

*Save Our Heritage v. Gonzalez*,
   533 F. Supp. 2d 58 (D.D.C. 2008) ......................................................................... 4, 6

*Sierra Club v. Ashcroft*,
   No. 04-272, 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005) ....................................... 4, 6

*Sierra Club v. Trump*,
   379 F. Supp. 3d 883 (N.D. Cal. 2019) ......................................................................... 4

*Smith v. Fed. Reserve Bank of N.Y.*,
   280 F. Supp. 2d 314 (S.D.N.Y. 2003) ...................................................................... 17

*Touby v. United States*,
   500 U.S. 160 (1991) ................................................................................................. 13

*United States v. Keller*,
   142 F.4th 645 (9th Cir. 2025) ................................................................................... 5-6

*United States v. Scampini*,
   911 F.2d 350 (9th Cir. 1990) .................................................................................... 14

*Whitman v. American Trucking Assns.*,
   *Inc.*, 531 U.S. 457 (2001) ...................................................................................... 7, 13

**Statutes**

8 U.S.C. § 1103 ............................................................................................................. 2

25 U.S.C. § 3406 ......................................................................................................... 17

Deficit Reduction Act of 2005,
   Pub. L. No. 109-171, 120 Stat. 4 (Feb. 6, 2006) ......................................................... 17

Illegal Immigration Reform and Immigrant Responsibility Act of 1996,
    Pub. L. No. 104-208, 110 Stat. 3009 (Sep. 30, 1996)..............................................*passim*

**Rules**

Fed. R. Civ. P. 56(a)........................................................................................................ 5

**Regulations**

Determination Pursuant to Section 102 of the Illegal Immigration
    Reform and Immigrant Responsibility Act of 1996 as Amended
    by Section 102 of the REAL ID Act of 2005,
    70 Fed. Reg. 55622 (Sept. 22, 2005)......................................................... 3

Determination Pursuant to Section 102 of the Illegal Immigration
    Reform and Immigrant Responsibility Act of 1996 as
    Amended by Section 102 of the REAL ID Act of 2005
    and as Amended by the Secure Fence Act of 2006,
    72 Fed. Reg. 60870 (Oct. 26, 2007)......................................................... 3

Determination Pursuant to Section 102 of the Illegal Immigration
    Reform and Immigrant Responsibility Act of 1996, as Amended,
    73 Fed. Reg. 19078 (Apr. 8, 2008) ......................................................... 3

Determination Pursuant to Section 102 of the Illegal Immigration
    Reform and Immigrant Responsibility Act of 1996, as Amended,
    82 Fed. Reg. 35984 (Aug. 2, 2017)......................................................... 3

Determination Pursuant to Section 102 of the Illegal Immigration
    Reform and Immigrant Responsibility Act of 1996, as Amended,
    82 Fed. Reg. 42829 (Sept. 12, 2017)....................................................... 3

Determination Pursuant to Section 102 of the Illegal Immigration
    Reform and Immigrant Responsibility Act of 1996, as Amended,
    84 Fed. Reg. 21798 (May 15, 2019) ....................................................... 3

Exec. Order No. 14165, Securing Our Borders,
    90 Fed. Reg. 8467 (Jan. 20, 2025) ......................................................... 9

Determination Pursuant to Section 102 of the Illegal Immigration
    Reform and Immigrant Responsibility Act of 1996, as Amended,
    90 Fed. Reg. 23946 (June 5, 2025) ......................................................... 4

**Other Authorities**

H.R. Rep. 109-72 (May 3, 2005) ...................................................................................... 3, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Congress has repeatedly articulated that the construction of border infrastructure is a significant, national priority. To effectuate that priority, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which authorized the U.S. Department of Homeland Security to construct physical barriers and roads along the border. Congress determined that expeditious completion of such construction can outweigh compliance with other laws, including environmental laws that can lead to protracted litigation. One of the statutory tools that the DHS Secretary may use in carrying out that task is legal waivers; the IIRIRA authorizes the Secretary to waive any legal requirements to ensure expeditious construction of border barriers and roads. Although the IIRIRA has been amended several times, that waiver authority has been reiterated and strengthened through each amendment.

In this case, Plaintiffs challenge § 102(c) of the IIRIRA and a recent waiver issued under its authority. Plaintiffs raise two constitutional challenges: (1) that Congress may not delegate authority to waive laws to the Executive Branch, and (2) that waiver of laws by the Executive violates the bicameralism and presentment procedures in the Presentment Clauses. Such theories have no credible basis in constitutional jurisprudence, and every court to hear such challenges has unambiguously upheld the constitutionality of the statute.

For these reasons, as set forth below, the Court should grant summary judgment to Defendants and deny Plaintiffs' motion for summary judgment.

1

## BACKGROUND

### I.     Statutory Framework

The IIRIRA requires the Secretary of the Department of Homeland Security to "take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." Pub. L. No. 104-208, Div. C, Title I, § 102(a), 110 Stat. 3009-554 (Sept. 30, 1996), codified at 8 U.S.C. § 1103 note.[1] In addition to this broad mandate, Congress provided certain guidelines, including the following:

> In carrying out subsection (a), the Secretary of Homeland Security shall construct reinforced fencing along not less than 700 miles of the southwest border where fencing would be most practical and effective and provide for the installation of additional physical barriers, roads, lighting, cameras, and sensors to gain operational control of the southwest border.

IIRIRA § 102(b) (as amended). Congress also gave the Secretary freedom to determine whether the placement of security items was "the most appropriate means to achieve and maintain operational control over the international border." *Id.*

In addition to these guidelines, Congress provided two mechanisms to ensure expeditious barrier construction. First, Congress granted the Secretary "the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under

---

[1] At the time of its enactment, enforcement of the IIRIRA lay with the Attorney General. Congress amended the IIRIRA to give authority to the Secretary of DHS in 2005. *See* REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, § 102.

this section." *Id.* § 102(c)(1). Congress originally limited this provision to the Endangered Species Act and the National Environmental Policy Act, *see* Pub. L. No. 104-208, Div. C, Title I, § 102(c), but later expanded it to include "all legal requirements." Pub. L. No. 109-13, Div. B, Title I, § 102(c)(1); *see also* H.R. Rep. 109-72, at 171 (May 3, 2005) (Conf. Rep.) (explaining "Congress' intent that the . . . waiver authority extends to any local, state or federal statute, regulation, or administrative order that could impede expeditious construction of border security infrastructure").

Second, Congress created a streamlined system of judicial review for challenges to the Secretary's waiver authority. It gave federal courts "exclusive jurisdiction" over such challenges and limited those challenges to allegations of a constitutional violation. IIRIRA §102(c)(2)(A). Legal challenges must be brought within 60 days, and the only appellate review is a certiorari petition to the U.S. Supreme Court. *Id.* at § 102(c)(2)(B), (C). The conference report explained that the strictly limited review reflected the "Conferees' intent [] to ensure that judicial review of actions or decisions of the Secretary not delay the expeditious construction of border security infrastructure, thereby defeating the purpose of the Secretary's waiver." H.R. Rep. 109-72 at 172.

## II.    The Secretary's Exercise of Waiver Authority

Since 2005, the Secretary has repeatedly issued waiver determinations under the IIRIRA to ensure expeditious construction of barriers and roads along the border. *See, e.g.*, 84 Fed. Reg. 21798 (May 15, 2019); 82 Fed. Reg. 42829 (Sept. 12, 2017); 82 Fed. Reg. 35984 (Aug. 2, 2017); 73 Fed. Reg. 19078 (Apr. 8, 2008); 72 Fed. Reg. 60870 (Oct. 26, 2007); 70 Fed. Reg. 55622 (Sept. 22, 2005). Every judicial challenge to these

determinations has been dismissed. *See Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218 (D.D.C. 2019), *cert. denied*, 141 S. Ct. 158 (June 29, 2020); *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018), *aff'd,* 915 F.3d 1213 (9th Cir. 2019), *cert. denied*, 586 U.S. 1035 (Dec. 3, 2018); *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 922-23 (N.D. Cal. 2019), *aff'd,* 963 F.3d 874 (9th Cir. 2020), *vacated and remanded,* 142 S. Ct. 42 (2021); *N. Am. Butterfly Ass'n v. Nielsen*, 368 F. Supp. 3d 1 (D.D.C. 2019), *aff'd in part, rev'd in part,* 977 F.3d 1244 (D.C. Cir. 2020); *Cnty. of El Paso v. Chertoff*, No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008), *cert. denied*, 557 U.S. 915 (2009); *Save Our Heritage Org. v. Gonzalez*, 533 F. Supp. 2d 58 (D.D.C. 2008); *Defs. of Wildlife v. Chertoff*, 527 F. Supp. 2d 119 (D.D.C. 2007), *cert. denied*, 554 U.S. 918 (2008); *Sierra Club v. Ashcroft*, No. 04-272, 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005).

On June 5, 2025, Defendant Kristi Noem, Secretary of DHS, published an additional waiver determination under the IIRIRA. 90 Fed. Reg. 23946. The waiver concerned two separate sections in the U.S. Border Patrol Tucson Sector. *Id*. The first starts approximately one mile west of Border Monument 121 and extends east to Border Monument 117; the second starts at Border Monument 99 and extends west approximately 33.4 miles. *Id*. The Secretary chose these sections because she determined that the Tucson Sector is an area of high illegal entry, with over 463,000 illegal aliens and thousands of pounds of illegal drugs apprehended in 2024. *Id*. Accordingly, she announced the waiver of certain laws "with respect to the construction of physical barriers and roads . . . in the project area . . . including all federal, state, or other laws, regulations, and legal requirements of, deriving from, or

4

related to the subject of, the [listed] statutes." *Id*. at 23946-47.

### III. Procedural History

On July 8, 2025, Plaintiffs Center for Biological Diversity and Conservation CATalyst filed a complaint against Kristi Noem, in her official capacity as Secretary of Homeland Security, the Department of Homeland Security, and United States Customs and Border Protection. ECF No. 1. Ten days later, on July 16, Plaintiffs filed a Motion for Summary Judgment. ECF No. 11 ("Pls.' Mot."). Pursuant to the parties' joint motion, on August 11, 2025, the Court set a briefing schedule for cross motions for summary judgment. ECF No. 17. Accordingly, Defendants' Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment are due August 29, 2025. *Id*.

### IV. Standard of Review

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### ARGUMENT

### I.    The Waiver Provision Does Not Violate the Non-Delegation Doctrine

The Non-Delegation Doctrine is rooted in the separation powers, but few laws violate it. The Supreme Court has found a violation of the nondelegation doctrine "[o]nly twice in this country's history," both of which occurred in 1935. *United States v. Keller*,

142 F.4th 645, 656 (9th Cir. 2025) (citing *Gundy v. United States*, 588 U.S. 128, 146 (2019)). As the Supreme Court recently emphasized in denying a nondelegation challenge this past term, "[l]egislative power . . . belongs to the legislative branch, and to no other." *FCC v. Consumers' Rsch.*, 145 S. Ct. 2482, 2496 (2025). However, "Congress may 'seek[] assistance' from its coordinate branches to secure the 'effect intended by its acts of legislation." *Id.* (alteration in original) (citation omitted). In seeking assistance from other branches of government, Congress may "vest discretion" in Executive Branch "agencies to implement and apply the laws it has enacted." *Id.* (citation modified). So long as Congress sets forth an "intelligible principle" to guide an agency's actions, it effects a lawful grant of discretion rather than an unlawful delegation of legislative power. *See id.* at 2497 ("To distinguish between the permissible and the impermissible in this sphere, we have long asked whether Congress has set out an 'intelligible principle' to guide what it has given the agency to do.").

Plaintiffs' Non-Delegation Doctrine claim fails because the intelligible principle that Congress provided to guide DHS's exercise of delegated discretion in the IIRIRA is well within the bounds provided by existing precedent. This conclusion has been repeatedly recognized by every other court that has addressed this same issue. *See Ctr. for Biological Diversity*, 404 F. Supp. 3d at 244-49 (Jackson, J.); *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1130-37; *Cnty. of El Paso*, 2008 WL 4372693, at *2-4; *Save Our Heritage*, 533 F. Supp. 2d at 63-64; *Defs. of Wildlife*, 527 F. Supp. 2d at 126-29; *Sierra Club*, 2005 WL 8153059, at *4-7. This Court should reach the same conclusion and grant summary judgment in favor of Defendants.

**a.  The Waiver Provision Does Not Unconstitutionally Delegate Legislative Authority to the Executive.**

Plaintiffs claim that the waiver provision of the IIRIRA delegates "quintessential legislative authority" to the DHS Secretary. Pls.' Mot. at 7. Yet, Plaintiffs cite no authority for this proposition. There is no distinction, and never has been, between delegable legislative authority and nondelegable legislative authority. Certainly, Congress may not offer all its legislative power to the executive or relinquish its role in a particular area. *See Mistretta v. U.S.*, 488 U.S. 361, 415 (1989) (Scalia, J., dissenting) ("Our Members of Congress could not, even if they wished, vote all power to the President and adjourn *sine die.*"); *Consumers' Rsch.*, 145 S.Ct. at 2513 (Kavanaugh, J., concurring) ("Congress likewise cannot merely assign the President to take over the legislative role as to a particular subject matter."). However, absent complete abdication of authority, the Supreme Court has never listed some types of legislative authority as undelegable and others as delegable. Rather, Congress may delegate so long as it provides an intelligible principle to guide the Executive Branch. *Consumers' Rsch.,* 145 S. Ct. at 2497.

Plaintiffs seek to parse this clear rule by arguing that the waiver gives the Executive "hallmark legislative functions" of policy prioritization and decision making. Pls.' Mot. at 7. As an initial matter, policy making is squarely within the realm of discretion that Congress may delegate. *See Consumers' Rsch.*, 145 S. Ct. at 2497 ("A 'degree of policy judgment' can 'be left to those executing or applying the law.'" (citing *Whitman v. American Trucking Ass'ns,* 531 U.S. 457, 474-75 (2001)). Even so, the IIRIRA clearly sets forth a policy of improving border protection by expediting the

7

construction of necessary barriers and roads in areas of high illegal entry. *See* discussion

*infra*, p. 11. Plaintiffs claim that Congress abdicated its role of prioritizing between

competing values when it comes to border security, Pls.' Mot. at 8, but the waiver

provision does the prioritizing for the Secretary. By placing no limitations on the kinds of

laws that may be waived, Congress prioritized border security over any other values, such

as environmental concerns. This prioritization is a clear mandate from Congress:

construct barriers and roads at the border, and if another law impedes expeditious

construction, the Secretary may waive it.[2]

      Plaintiffs also question Congress's decision not to waive the laws itself; rather

than delegate to the Secretary, Congress could have waived any laws in the IIRIRA. *See*

Pls.' Mot. at 8. This is a distinction in name but not substance. Whether Congress

explicitly waived the laws directly via statute or authorized the Secretary to do so, the

result is the same: waiver of any laws that inhibit border wall construction. Congress also

did not avoid political responsibility by giving the Secretary this discretion. The line of

causation from Congress to the waiver of laws is clear. Simply allowing the Secretary to

waive laws does not mean that Congress is not ultimately responsible for its legislative

choices. In fact, by suing under Non-Delegation Doctrine, Plaintiffs subtly admit that the

Congress is ultimately responsible for the waiver they challenge.

---

[2] Plaintiffs later assert that the Secretary is "blindly prioritizing border wall [security] over compliance with any and all other laws." Pls.' Mot. at 16. This seems to imply illegality, despite the clear intention of Congress to do exactly that. Explicit obedience to statutory text is not blind or violative of the law.

What Congress has crafted in the IIRIRA is targeted flexibility. While Congress initially anticipated that the National Environmental Policy Act and the Endangered Species Act could be the source of undue construction delay and thus made them expressly waivable, *see* Pub. L. No. 104-208, Div. C, Title I, § 102(c), in 2005, Congress shifted to the current waiver approach after plaintiffs in other cases unexpectedly used the Coastal Zone Management Act to shut down construction. *See,* H.R. Rep. 109-72 at 171 (May 3, 2005) (Conf. Rep.) ("Continued delays caused by litigation have demonstrated the need for additional waiver authority with respect to other laws . . . such as the Coastal Zone Management Act."). Section 102 reflects Congress's conclusion that it could not sufficiently anticipate the ways that existing laws would be wielded to frustrate Congress's priorities in favor of border barrier construction. Congress thus reasonably concluded that the Secretary would be in a far better position to assess which laws to waive based on the various project-specific and on-the-ground considerations that inform each border wall project.

Moreover, this delegation is on even stronger footing because it falls within the class of decisions regarding national security and foreign policy for which greater delegation is permitted. *See Loving v. United States*, 517 U.S. 748, 772 (1996); *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988). Construction of a barrier along the international border prevents illegal immigration and counters threats posed by entry of "potential terrorists, foreign spies, members of cartels, gangs, and violent transnational criminal organizations, and other hostile actors with malicious intent." Exec. Order No. 14165, Securing Our Borders, 90 Fed. Reg. 8467 (Jan. 20, 2025). Congress has more leeway to

delegate power in such areas where the Executive has independent constitutional authority. *See Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("because the power of exclusion of aliens is also inherent in the executive department of the sovereign, Congress may in broad terms authorize the executive to exercise the power"). "[T]he same limitations on delegation do not apply 'where the entity exercising the delegated authority itself possesses independent authority over the subject matter." *Loving* 517 U.S. at 772 (citation omitted). The Supreme Court has never struck down a delegation on a matter of foreign affairs or national security and has recognized that Congress may delegate authority to the Executive "without further guidance." *Loving*, 517 U.S. at 773. Accordingly, DHS's authority to waive laws under the IIRIRA is well within constitutional bounds.

### b. Congress Provided an Intelligible Principle to Guide the Secretary's Waiver Authority.

There is also no merit to Plaintiffs' argument that Congress failed to provide an intelligible principle to guide the Secretary's waiver authority. To provide a constitutionally permissible "intelligible principle," Congress need only delineate "both 'the general policy' that the agency must pursue and 'the boundaries of [its] delegated authority.'" *Consumers' Rsch.*, 145 S. Ct. at 2497 (alteration in original) (citing *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946). That standard is easily met here.

10

### i.    Congress Established a General Policy in the IIRIRA

Congress established a general policy in the IIRIRA. Section 102(a) delineates a "general policy" of installing infrastructure to "deter illegal crossings in areas of high illegal entry into the United States," which § 102(c) incorporates by tying the waiver authority to "expeditious construction of the barriers and roads under this section." This establishes a policy to guide the Secretary: that improving border protection by expediting the construction of necessary barriers and roads is a critical Congressional priority. *See, e.g.*, *Ctr for Biological Diversity*, 404 F. Supp. 3d at 248 (finding a guiding principle in the "narrow purpose" of "expeditious completion of [] border fences"); *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1133 (finding a "clearly delineated" policy of "deterrence of illegal crossings through construction of additional physical barriers to improve U.S. border protection"); *Defs. of Wildlife*, 527 F. Supp. 2d at 127 (finding a clearly delineated general policy "to expeditiously 'install additional physical barriers and roads . . . to deter illegal crossings in areas of high illegal entry'"(citation omitted)).

Plaintiffs seek to differentiate these cases by arguing that these courts' policy statements lacked "criteria, principles, or standards to inform the Secretary's decision-making." Pls.' Mot. at 12 n.3. Plaintiffs cite no authority for this proposition. The intelligible principle test does not require factors or multi-step tests, it only requires a general policy and boundaries. *See Consumers' Rsch.*, 145 S. Ct. at 2497. As every court has found, the IIRIRA fulfills both of these requirements.

### ii.    Congress Set Boundaries on the Secretary's Authority.

Congress also set meaningful boundaries on the Secretary's delegated authority. The IIRIRA sets two boundaries on the Secretary's authority: a geographic one and a temporal one. Waivers may only be issued in connection with construction "in the vicinity of the United States border." *Id.* § 102(a) (incorporated by the "under this section" cross-reference). The second boundary is temporal necessity. Waivers may only be issued when "necessary to ensure expeditious construction" at those locations. *Id.* § 102(c). *See Defs. of Wildlife*, 527 F. Supp. 2d at 127 (concluding that Congress provided a sufficient boundary by instructing that "the Secretary may waive only those laws that he determines 'necessary to ensure expeditious construction'" (citation omitted)). As then-Judge Jackson concluded, "from the standpoint of what suffices as guidance from Congress regarding how the Executive Branch is to exercise the authority granted in the statute for constitutional purposes, what is set forth in subsections 102(a) and 102(c) is enough." *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 249.

Nevertheless, Plaintiffs claim that the IIRIRA waiver provision is a "*carte blanche*" grant of power to the Secretary, with no limitations on (1) the laws that may be repealed, (2) the kind of border construction, (3) the timing, or (4) the location. Pls.' Mot. at 10. This is simply not true; the IIRIRA specifies: (2) the specific types of border infrastructure to which it applies, i.e. barriers, roads, and barrier systems, (3) that waivers are only permitted when "necessary to ensure expeditious construction"; and (4) that construction may only take place "in the vicinity of the United States border." As to the

first point, the IIRIRA does not allow waiver of any law at a whim but confines the Secretary's authority to waiver of laws that impede expeditious completion of construction. This is a meaningful boundary on the Secretary's authority.

Plaintiffs further claim that the terms "necessary" and "expeditious" are insufficient boundaries. But the Supreme Court has repeatedly accepted the targeted flexibility inherent in such criteria. *See, e.g.*, *Whitman v*, 531 U.S. at 475-76 (holding that "necess[ity]" standard "fits comfortably within the scope of discretion permitted by our precedent"); *Touby v. United States*, 500 U.S. 160, 163 (1991) (approving delegation of authority to designate a controlled substance for purposes of criminal drug enforcement if doing so was "necessary to avoid an imminent hazard to the public safety"). Here, Plaintiffs disregard the narrowly confined scope of the Secretary's discretion—only infrastructure construction in the vicinity of the border, and only waiver of laws that impede expeditious completion of that construction. *See* IIRIRA § 102(c). This is not nearly as broad as even the discretion involved in *Whitman*—"setting air standards that affect the entire national economy." 531 U.S. at 475 (not requiring "the statute to decree . . . how 'necessary' was necessary enough"). And because the discretion here is far narrower in scope, there is less need for detailed criteria to guide exercise of that discretion. *See id.* at 474 ("[T]he degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred.").

In arguing that the IIRIRA has no boundaries, Plaintiffs essentially invent new requirements on Congress's delegation authority. Plaintiffs claim that there are no factors, criteria, limitations, or programmatic outcomes to guide the Secretary's waivers.

13

Pls.' Mot. at 14–15. Not so. As explained above, and as every court to have considered the question has found, the IIRIRA provides constitutionally sufficient criteria for when and where the Secretary may exercise her authority. The ample guidance provided in the IIRIRA is more than sufficient to constitute an intelligible principle and survive constitutional scrutiny.

## II.    The Waiver Provision Does Not Violate the Presentment Clauses.

Plaintiffs also claim that Congress's delegation of authority to waive federal statutes infringes on the lawmaking procedures required under Article I, § 7 of the Constitution. Pls.' Mot. at 15. Clauses 2 and 3 of Article I, § 7 are called the "presentment clauses." *See United States v. Scampini*, 911 F.2d 350, 351 (9th Cir. 1990). These clauses "require that all legislation be presented to the President so that he may have the opportunity to exercise his veto power before any legislation becomes law." *Id*. Plaintiffs claim that the IIRIRA §102(c) violates the Presentment Clauses by "granting the Secretary the legislative authority to unilaterally repeal any existing law." Pls.' Mot. at 15. Plaintiffs' claim is meritless, and all courts to consider such a challenge have rejected it. *See, e.g., Ctr. For Biological Diversity*, 404 F. Supp. 3d at 246-47; *Cnty. of El Paso*, 2008 WL 4372693, at *6-7; *Defs. of Wildlife*, 527 F. Supp. 2d at 123-26.

The Presentment Clauses require a specific process, prohibiting legislative action that does not conform to it. Thus, the Constitution does not authorize the President "to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417, 438 (1998). In *Clinton*, the Supreme Court struck down the Line Item Veto Act, which gave the President the authority to "cancel[]" certain appropriated spending items that had

been passed by Congress. *Id.* That statute failed because cancellation prevented the items "from having legal force or effect" and thus in "both legal and practical effect, the President has amended two Acts of Congress by repealing a portion of each." *Id.*; *see also id.* at 447 (holding it improper to give the President "unilateral power to change the text of duly enacted statutes").

Plaintiffs' claim fails because waiver of a legal requirement for a specific purpose is not amendment or repeal of a statute. As then-Judge Jackson found in *Center for Biological Diversity*:

> "under the IIRIRA's waiver provision, '[t]he Secretary has no authority to alter the text of any statute, repeal any law, or cancel any statutory provision, in whole or in part.' [T]o assert otherwise would effectively transform *any* Executive Branch waiver (the U.S. Code contains 'myriad examples' of such) into a violation of Article I, 'no matter how limited in scope.'"

404 F. Supp. 3d at 246 (citing *Defs. of Wildlife* 527 F. Supp. 2d at 124-25). Under a §102(c) waiver, the waived statutes are inapplicable only with respect to the construction of barriers and roads along the relevant portion of the border. The statutes retain their general legal force and effect because the Secretary's waiver extends to only a tiny fraction of the universe of cases to which any waived laws apply. While Plaintiffs seek to magnify the issue by citing the miles of border wall using waivers, that only amplifies the point: the waivers only apply to the border barrier and road construction, and these laws remain in force in every other application.

Other courts have rejected similar arguments against waiver provisions. *See Republic of Iraq v. Beaty,* 556 U.S. 848, 861 (2009) ("The [statutory] proviso *expressly* allow[ing] the President to render certain statutes inapplicable . . . did not repeal anything,

but merely granted the President authority to waive the application of particular statutes to a single foreign nation."); *Acree v. Republic of Iraq*, 370 F.3d 41, 64, n.3 (D.C. Cir. 2004) (Roberts, J., concurring) (dismissing constitutional challenge to statute permitting President to make inapplicable to Iraq "any other provision of law that applies to countries that have supported terrorism" because the authorized actions "are a far cry from the line-item veto at issue in *Clinton*, and are instead akin to the waivers that the President is routinely empowered to make in other areas, particularly in the realm of foreign [policy]"); *In re NSA Telecomm. Records Litig. v. AT&T Corp.*, 671 F.3d 881, 895 (9th Cir. 2011) (rejecting Presentment Clause challenge to an "executive grant of immunity or waiver of claim," on the ground that it "has never been recognized as a form of legislative repeal").

Indeed, the authority in § 102(c) is similar to an "executive grant of immunity or waiver of claim" which "has never been recognized as a form of legislative repeal." *See Telecomm. Records*, 671 F.3d at 895. The Ninth Circuit rejected a Presentment Clause challenge to 50 U.S.C. § 1885a, which permits the Attorney General "to immunize from suit telecommunications companies that had cooperated with the government's intelligence gathering." *Id.* at 891. Even though such grants of immunity prevent civil actions to enforce the otherwise applicable "law governing electronic surveillance," the Circuit found no constitutional defect because "[t]he law remains as it was when Congress approved it and the President signed it." *Id.* at 894-95. The Circuit also supported its conclusion by noting that the authority for executive officials to "trigger a defense or immunity for a third party," is "not uncommon." *Id.* at 895. Here, similarly, the § 102(c) authority in one statute granting authority to waive application of one or more other statutes is not uncommon. *See*

*Defs. of Wildlife*, 527 F. Supp. 2d at 125 & n.5 (collecting some of the "myriad examples of waiver provisions in federal statutes"); *see also, e.g.*, 25 U.S.C. § 3406 (authorizing Secretary of each Federal agency providing funds for program to waive "any [] statutory . . . requirement, regulation, policy, or procedure promulgated by that agency"); Deficit Reduction Act, Pub. L. No. 109-171, § 5107(a)(2), 120 Stat. 4, 42 (Feb. 6, 2006) (providing for waiver of "such provisions of law . . . as are necessary to implement [specified statutory provision] on a timely basis").

Nor does § 102(c) raise the same separation of powers concerns that were at issue in *Clinton*. There, the Supreme Court was concerned that the President's line-item veto was "rejecting the policy judgment made by Congress and relying on his own policy judgment." 524 U.S. at 444. But here, Congress unmistakably expressed its policy judgment that construction of the barriers and roads along the border was of such importance that it justified waiving application of environmental and other laws to the extent those laws threaten expeditious construction. *See* IIRIRA § 102(c)(1). Thus, in sharp contrast to *Clinton*, there is no question that the Secretary is executing (rather than rejecting) the will of Congress. *Cf. Smith v. Fed. Rsrv. Bank of N.Y.*, 280 F. Supp. 2d 314, 324 (S.D.N.Y. 2003) (upholding waiver where "[u]nlike in *Clinton*" the President "is carrying out, not rejecting, a policy made by Congress").

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to Defendants on all counts and deny Plaintiffs' motions for summary judgment on all counts.

Dated: August 29, 2025                    Respectfully submitted,


BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

*/s/   Alexander J. Yun*
ALEXANDER J. YUN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
202-674-0255
Alex.Yun@usdoj.gov

*Counsel for Defendants*