Anchun Jean Su (DC Bar No. CA285167)
Howard M. Crystal (DC Bar No. 446189)
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
Tel: (202) 849-8399
Emails: jsu@biologicaldiversity.org
         hcrystal@biologicaldiversity.org
*Admitted Pro Hac Vice*

Tala DiBenedetto (NY Bar No. 5836994)
P.O. Box 371
Oceanside, NY 11572-0371
Tel: (718) 874-6734, ext. 555
Email: tdibenedetto@biologicaldiversity.org
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA
# TUCSON DIVISION

| | |
|---|---|
| Center for Biological Diversity; and Conservation CATalyst, <br><br> *Plaintiffs*, <br><br> v. <br><br> Kristi Noem, in her official capacity as Secretary of Homeland Security; U.S. Department of Homeland Security; and U.S. Customs and Border Protection, <br><br> *Defendants*. | Case No. CV-25-00365-TUC-AMM (JEM) <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** <br><br> (Oral Argument Requested) |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ............................................................................................................1

ARGUMENT ....................................................................................................................2

  I. The Waiver and IIRIRA Section 102(c) Violate the Non-Delegation Doctrine................................................................................................................2

    A. The Government mischaracterizes the nature and scope of Section 102(c)............3

    B. In light of Section 102(c)'s immense discretion and scope of power, Congress did not provide a sufficient intelligible principle to bound the Secretary ...............5

      i. Neither Sections 102(a) nor 102(c) provide meaningful boundaries..................5

      ii. Prior cases concerning Section 102(c) are not persuasive. ...............................8

  II. The Waiver and IIRIRA Section 102(c) Also Violate the Presentment Clause ..............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Clinton v. City of New York*,
  524 U.S. 417 (1998)..................................................................................11

*Ctr. for Biological Diversity v. McAleenan*,
  404 F. Supp. 3d 218 (D.D.C. 2019)........................................................9, 10

*Defenders of Wildlife v. Chertoff*,
  527 F. Supp. 2d 119 (D.D.C. 2007)..............................................................9

*Dep't of Navy v. Egan*,
  484 U.S. 518, 527 (1988).............................................................................5

*FCC v. Consumers' Rsch.*,
  145 S. Ct. 2482 (2024)................................................................... 1, 3, 5, 9

*Gundy v. United States*,
  588 U.S. 128, 154–56 (2019)......................................................................11

*In re Border Infrastructure Envtl. Litig.*,
  284 F. Supp. 3d 1092 (S.D. Cal. 2018).........................................................9

*Loving v. United States*,
  517 U.S. 748, 772 (1996).............................................................................5

*Mertens v. Hewitt Associates*,
  508 U.S. 248 (1993).....................................................................................6

*NSA Telecomms. Records Litig. v. AT&T Corp.*,
  671 F.3d 881 (9th Cir. 2011) .....................................................................10

*Republic of Iraq v. Beaty*,
  556 U.S. 848 (2009)...................................................................................10

*Sierra Club v. Ashcroft*,
  2005 U.S. Dist. LEXIS 44244 (S.D. Cal. Dec. 13, 2005) ............................8

*Touby v. United States*,
  500 U.S. 160 (1991).....................................................................................8

*United States ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950).....................................................................................5

*Whitman v. American Trucking Ass'n*,
  531 U.S. 457 (2001)............................................................................1, 7, 8

**Statutes**

16 U.S.C. § 1531 *et seq*. .....................................................................................3

25 U.S.C. § 3001 *et seq*. ...................................................................................11

25 U.S.C. § 3406 ...............................................................................................10

| | |
|---|---|
| 8 U.S.C. § 1103 | 1 |
| 8 U.S.C. § 1103(a)(5) | 7 |
| IIRIRA § 102, As Amended (codified at 8 U.S.C. § 1103 note) | |
|    IIRIRA § 102(a) | 5, 6, 9 |
|    IIRIRA § 102(b) | 2, 8 |
|    IIRIRA § 102(c) | passim |
| Pub. L. No. 109-171, § 5107(a)(2) | 10 |

**Rules**

| | |
|---|---|
| 90 Fed. Reg. 23947 (June 5, 2025) | 3 |

**Other Authorities**

| | |
|---|---|
| Brief for Dr. Deni J. Seymour et al. as Amicus Curiae Supporting Petitioners at 14-15, 23, *McAleenan*, 404 F. Supp. 3d 218 (D.D.C. 2019), *cert. denied*, 141 S. Ct. 158 (2020) (No. 19-975) | 11 |
| David J. Barron et al., *In Defense of Big Waiver*, 113 Colum. L. Rev. 265 (2013) | 10 |

# INTRODUCTION

The Government holds a funhouse mirror up to Section 102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA")[1] that distorts—and thus seeks to hide—both the hallmark legislative nature of IIRIRA's delegation and the astonishing scope of power the statute abdicates to the Department of Homeland Security ("DHS") Secretary to nullify *any* law, across *all* levels of government, as applied to an immense geography, in perpetuity. As the Supreme Court recently reiterated, "[t]he degree of agency discretion that is acceptable [for congressional delegations] varies according to the scope of the power congressionally conferred." *FCC v. Consumers' Rsch.*, 145 S. Ct. 2482, 2497 (2024) (citing *Whitman v. American Trucking Ass'n*, 531 U.S. 457, 474-75 (2001)). Here, because Congress's immense delegation in Section 102(c) is not cabined by meaningful congressional boundaries, IIRIRA violates the separation of powers.

Nevertheless, the Government's central argument is that Section 102(c) does not delegate legislative power to the Executive in violation of the non-delegation doctrine because Congress already determined that wall construction overrides all other interests protected by federal, tribal, state, and local laws. But the Government is wrong. Section 102(c) improperly divests that difficult decision-making power to the Secretary to pick and choose which out of the universe of all statutorily-protected interests should be subjugated to barrier construction—all without an iota of Congressional guidance. Moreover, the Government's attempts to manufacture an "intelligible principle" out of the statute's terms—which give the Secretary "sole discretion" to strip away whatever rights

---

[1] All subsequent undesignated statutory references herein refer to IIRIRA (codified at 8 U.S.C. § 1103 note).

she unilaterally defines as "necessary" to hasten border construction—also fail because they do not meaningfully inform the Secretary's choice of ranking competing values or otherwise constrain her scope of unfettered power.

Nor are previous cases—on which the Government heavily relies, but many of which considered the constitutionality of a more restricted Section 102(c) scope of power—persuasive here. The earliest cases—on which all the later cases based most of their analysis—interpreted an earlier version of IIRIRA where Section 102(c) narrowly applied to a relatively diminutive geography for barrier construction. Later cases addressed a larger mileage area defined in a further amended Section 102(b). But more recent cases did not entertain how the intelligible principle upheld by earlier courts could still sufficiently constrain an even larger scope of Section 102(c) power, whereby DHS claimed its application to a far greater geographic scope than before. These courts also did not meaningfully grapple with the nature of the delegation of picking and choosing which laws should be sacrificed for border wall construction and whether IIRIRA sufficiently guided that precise decision-making of ranking competing rights. *See* Section I.B.ii, *infra*.

The Government also likens Section 102(c) to a typical plain vanilla waiver provision, but the Government's disingenuous characterization ignores the delegation's enormous scope in comparison to the macrocosm of narrow waivers in the U.S. Code. The application of Section 102(c) both in terms of scope of laws and geography of implementation amount to the repeal of laws bypassing the Presentment procedures, a power that even Congress does not possess.

## ARGUMENT

**I.     The Waiver and IIRIRA Section 102(c) Violate the Non-Delegation Doctrine.**

### A. The Government mischaracterizes the nature and scope of Section 102(c).

According to the Government, the Secretary is not making any independent policy decisions because Congress placed "no limitations on the kinds of laws that may be waived," and thus "prioritized border security over any other values." Defs.' Opp'n Summ. J. 8, ECF No. 18 ("Opp."). But that reading defies the statute's plain language and the Secretary's remarkable discretion in implementation. Section 102(c) provides that the Secretary "shall have [] authority to waive all legal requirements [in her] sole discretion [she] deems necessary" for expeditious barrier construction. Picking and choosing which of thousands of laws across all jurisdictions to comply with—and which to discard—for the purposes of wall construction crosses the constitutional line of "Congress assign[ing] the President to take over the legislative role as to a particular subject matter." *FCC*, 145 S. Ct. at 2513 (Kavanaugh, J., concurring). That the Secretary enumerated 34 federal laws—and all "tribal, state and local laws deriving therefrom," 90 Fed. Reg. 23947 (June 5, 2025)—in the Waiver evidences that the Secretary actively decided to subjugate those interests to border construction, not that Congress made that legislative decision for her.[2]

The Government cannot cure this defect by rewriting IIRIRA into a statute in which Congress *itself* explicitly waived all laws that would otherwise apply to border wall construction versus delegating to the DHS Secretary to pick and choose specific laws to nullify per her sole discretion. Opp. at 8 ("Whether Congress explicitly waived the laws

---

[2] For example, the Secretary waived the Endangered Species Act, 16 U.S.C. § 1531 *et seq*., in which Congress prioritizes the conservation of imperiled species above other considerations. As a result of the Secretary's unilateral decision to waive the Act in one of the country's most significant biodiversity hotspots, the U.S. population of the jaguar faces extirpation. Pls.' Mot. Summ. J. 5, ECF No. 11 ("Pls.' Mot.").

directly via statute or authorized the Secretary to do so" is "a distinction in name but not substance."). Indeed, the Government's resort to this argument simply highlights the constitutional infirmity of the statute that Congress actually passed, which goes to the heart of this case: the difference between Congress *keeping* paradigmatic legislative authority to itself and unconstitutionally *divesting* that authority to the Executive.

The Government gets no further in seeking to repackage the challenged delegation as "targeted flexibility" that takes advantage of the Secretary's familiarity with "the various project-specific and on-the-ground considerations that inform each border wall project." Opp. at 9. In reality, the Secretary has no relevant expertise over the entire U.S. Code that would allow her to evaluate subjugating the interests Congress sought to protect in other laws against the interest in prompt project construction. Nor was she given any guardrails by Congress to make those assessments in an informed manner—not even, for example, through expert agency consultation or established criteria, as Congress has required that agencies follow in other constitutional delegations. *See* Sec. I.B.i., *infra*.

Moreover, the Government's emphasis that the delegation is "on even stronger footing because it falls within the class of decisions regarding national security and foreign policy for which greater delegation is permitted" further misses the mark. Opp. at 9. While the Secretary may possess expertise and have shared authority in those areas, the policy-making power enshrined in Section 102(c) implicates the far wider universe of all public and private interests protected by the laws the Secretary is empowered to waive —*i.e.,* not only the entire U.S. Code, but every law of the state, Tribal Nation, and locality where the project will occur. In contrast, Defendants cite cases which all narrowly concern Executive decisions solely implicating the national security arena, where courts have justified greater

discretion and deference given the President's role as Commander in Chief. *See Loving v. U.S.*, 517 U.S. 748, 772 (1996) (President has authority to unilaterally set penalties for a court-martial); *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) (President received greater discretion regarding withholding national security information); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) (Attorney General permitted to exclude an alien based on national security concerns).

Finally, the Government repeatedly seeks to minimize Section 102(c)'s scope of power, describing it as "narrowly confined" to "only infrastructure construction in the vicinity of the border, and only waiver of laws that impede expeditious completion of that construction." Opp. at 13. As discussed below, neither geography nor expeditious construction goals constrain this rapacious scope of authority in any meaningful manner. Nor does the Government dispute the Secretary's remarkable scope of authority to waive the entire body of laws. Opp. at 12. Given Section 102(c) involves "significant power [,Congress] must supply more significant limits on an agency's discretion than when [it] confers some lesser authority," *FCC*, 145 S. Ct. at 2526 (Gorsuch, J., dissenting), but such meaningful limits are absent here.

**B. In light of Section 102(c)'s immense discretion and scope of power, Congress did not provide a sufficient intelligible principle to bound the Secretary.**

Section 102(c)'s remarkable scope of delegated power mandates robust bounds to pass constitutional muster. The Government contends Sections 102(a) and (c) pass the prevailing intelligible principle test. Opp. at 10-14. The Government is wrong.

**i.      Neither Sections 102(a) nor 102(c) provide meaningful boundaries.**

First, the mere objective of building barriers does not circumscribe the Secretary's

waiver discretion. Defendants argue that the general policy found in Section 102(a) of "installing infrastructure 'to deter illegal crossings in areas of high illegal entry into the United States' [] establishes a policy to guide the Secretary," which the Government paraphrases as a Congressional priority of "improving border protection by expediting the construction of necessary barriers and roads". Opp. at 11. But the Government's analysis is fatally flawed: it has failed to grapple with the nature of the delegation, where the Secretary picks and chooses which laws to nullify, for which the general goal in Section 102(a) to deter illegal entry does nothing to inform her deliberation of weighing competing statutorily-protected interests. The Supreme Court has held that broad and sweeping statements about "a statute's 'basic purpose' are [] inadequate to overcome the words of its text regarding the specific issue [the delegation encompassed in the §102(c) waiver authority] under consideration." *Mertens v. Hewitt Associates*, 508 U.S. 248, 261 (1993).

Second, Defendants claim the existence of two additional boundaries—"a geographic one and a temporal one"—as part of a purported intelligible principle. Opp. at 12. This attempt to concoct meaningful agency constraints falls flat.

Contrary to being an animating limitation, permitting the Secretary to construct border infrastructure *anywhere* "in the vicinity of the United States border," IIRIRA 102(a)—a phrase that is defined nowhere in IIRIRA—proffers an immense geographic scope that is entirely open to the Secretary's interpretation. For example, Defendant Customs and Border Protection operates anywhere within 100 miles of all U.S. borders, where nearly two out of three people in this country reside. Pls.' Statement of Facts 8, ECF No. 12. In the Government's view, therefore, the Secretary could waive all laws to unilaterally erect barriers anywhere inside the 100-mile border zone—which includes,

*e.g.*, cities along the southern and northern borders, as well as coastal borders like Washington, D.C. and New York City, and the entirety of Hawaii and Guam—so long as the Secretary invokes Section 102(c). This almost limitless geographic discretion only serves to tumefy the Secretary's scope of power.

Nor does Section 102(c) offer a boundary of "temporal necessity" that meaningfully restricts the Secretary's power to void laws. The Government argues that the Secretary's authority is confined only to those laws that "impede expeditious completion of construction." Opp. at 13. But neither the term "necessary" nor "expeditious" act as boundaries for waiving laws because they are defined exclusively by whatever the Secretary desires them to mean in her "sole discretion." Worse, the exercise of that discretion is not even bounded by any experience with, let alone expertise in, the myriad laws waived, which the Government does not dispute. If the Secretary has no expertise in the *operation* of the numerous laws she is called to (and routinely does) waive and need not even consult the agencies with such expertise, on what "intelligible" basis is the Secretary making judgments that waiving any of these laws is actually "necessary"? The Government has no coherent answer, and there is none.[3]

Although Defendants also argue that the word "necessity" in the delegation deems it constitutionally bounded, the cases they rely upon undermine their argument. In *Whitman*, 531 U.S. at 465 , the delegated authority to the Environmental Protection

---

[3] The fact that, since Section 102(c) was enacted, the Secretary has never constructed border barriers without using the waiver authority underscores how the term "necessary" for "expeditious" border construction lacks meaning and therefore is a hollow boundary. The Secretary still maintains the independent authority to undertake wall construction pursuant to the 1953 Immigration and Nationality Act, 8 U.S.C. §1103(a)(5) (2018)—and thus could continue border barrier construction even without relying on Section 102(c).

Agency to set air pollution standards at the level "requisite" to protect the public health fell squarely within the agency's exclusive legal jurisdiction and scientific expertise. So too in *Touby v. U.S.*, 500 U.S. 160, 163 (1991), where the constitutional delegation of authority to the Attorney General to designate a controlled substance for purposes of criminal drug enforcement fell solely within the agency's expertise. In stark contrast, the IIRIRA authority to nullify laws that impede border construction requires the Secretary's knowledge of the operation of laws fully outside DHS's expertise and jurisdiction. The Government also conveniently ignores that Congress enacted those constitutional delegations with robust criteria and procedures to properly direct—and constrain—Executive discretion.[4] None of those guiding directives exist in IIRIRA.

### ii. Prior cases concerning Section 102(c) are not persuasive.

The Government relies heavily on prior cases concerning the Secretary's exercise of Section 102(c), but those cases are not persuasive here. The earliest cases considered a prior statutory version of IIRIRA, where Section 102(c) was confined to a vastly smaller geographic scope enumerated in Section 102(b) and thus required less strict congressional boundaries on the delegation. *Sierra Club v. Ashcroft,* 2005 U.S. Dist. LEXIS 44244, at *19–20 (S.D. Cal. Dec. 13, 2005)("[T]he scope of the waiver authority" is "only for the *narrow purpose* of expeditious completion of the [14-mile] Triple Fence."). Later cases

---

[4] *Whitman*, 531 U.S. at 473 (delegation also requiring science and expert agency input, administrative rulemaking process, judicial review); *Touby*, 500 U.S. at 166-67 (delegation accompanied by statutorily-mandated criteria, intra-agency consultation, public comment process, and judicial review). In marked contrast, Section 102(c) is not cabined to one statute but instead involves *all* laws; lacks robust criteria and mandates for expert agency consultation, public process procedures, and open judicial review requirements; and is immunized from ordinary judicial scrutiny.

8
Plaintiffs' Opposition to Defendants' Summary Judgment Motion   CV-25-00365-TUC-AMM (JEM)

prior to 2017 relied on the fact that, even as the statute was amended, Congress had confined the waiver authority to a specified geography and had not even contemplated a scenario where DHS would exceed Section 102(b)'s 700-mile mandate—concluding that Sections 102(a) and (c) provided an intelligible principle. *See*, *e.g.*, *Defenders of Wildlife v. Chertoff*, 527 F. Supp. 2d 119, 128 (D.D.C. 2007). However, even that limitation of geographical scope has now been jettisoned because starting in 2018, DHS executed the waiver authority on mileage above the 700-miles mandate—and, with it, any meaningful geographic limitation on Section 102(c)'s exercise.

Nonetheless, once the Government decided Section 102(c)'s delegation authorized projects even beyond the 700 miles enumerated in Section 102(b), subsequent rulings largely relied on the above cases and found a sufficient intelligible principle. *See*, *e.g.*, *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 248 (D.D.C. 2019) ("this Court sees no reason to diverge from [*Chertoff*'s] reasoning"); *In re Border Infrastructure Envtl. Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018). But those courts were mistaken. They did not contemplate whether prior courts' findings of an intelligible principle might be reconsidered in light of DHS's claim that the waiver authority applied to a far greater geographic scope than before—thereby ignoring that no "one size fits all" with respect to the intelligible principle test, *FCC*, 145 S. Ct. at 2525 (Gorsuch, J., dissenting), where the strictness of the test tightens when the breadth of the purported delegated power expands. Nor did subsequent rulings meaningfully grapple with the nature of Congress's delegation to the Secretary of the authority of picking and choosing which laws to nullify—and whether the statute informs that precise delegation of ranking competing values.

## II. The Waiver and IIRIRA Section 102(c) Also Violate the Presentment Clause

In arguing that this case does not raise a Presentment Clause issue warranting this Court's consideration, the Government contends that Section 102(c) is "a waiver of a legal requirement for a specific purpose [that] is not amendment or repeal of a statute." Opp. at 15. That is doubly mistaken. First, the Government likens Section 102(c) to plain vanilla waiver provisions, of which "the U.S. Code contains 'myriad examples'" that do not alter the underlying law. *Id.* (citing *McAleenan*, 404 F. Supp. 3d at 346). But that massively distorts the scope of Section 102(c), which entails the most sweeping waiver authority ever enacted by Congress.[5] The Government itself proves as much. None of the statutes in the Government's laundry list of purported analogies resemble the impressive girth of Section 102(c): the extraordinary power to waive all laws, without input from agencies responsible for administering such laws and severed from ordinary judicial review.[6] This is a difference not only of degree but kind. With authority this capacious, the Secretary's power to waive is, effectively, the power to repeal.

Thus, because of Section 102(c)'s behemoth nature, the IIRIRA waivers function as amendments to the underlying laws being waived. To give an actual example, the Secretary has issued waivers nullifying the enforcement of the Native American Graves

---

[5] *See* David J. Barron et al., *In Defense of Big Waiver*, 113 Colum. L. Rev. 265, 290 (2013).
[6] The Government highlights prototypically narrow waiver authorities, Opp. at 15-17: the Attorney General's grant of immunity to a party that helps its prosecutorial case (the provision in *NSA Telecomms. Records Litig. v. AT&T Corp.*, 671 F.3d 881 (9th Cir. 2011); an agency's waiver authority regarding a one-time funding provision that applies solely to that agency's own set of regulations (25 U.S.C. § 3406); a waiver authority that applies to the one-time implementation of a specific program for therapy services (Deficit Reduction Act, Pub. L. No. 109-171, § 5107(a)(2); and a provision that is constricted to the President's particular authority over foreign relations and nothing else (*e.g.*, the provision in *Republic of Iraq v. Beaty*, 556 U.S. 848 (2009)).

Protection and Repatriation Act, 25 U.S.C. § 3001 *et seq.*, with respect to more than 500 miles of borderlands.[7] Significant swaths of this land contain sacred Native American burial grounds, land that is now subject to exhumation and permanent desecration. *Id*. The Secretary's waivers have effectively amended the statute with the provision: "Nothing in this law in its entirety shall apply to one-fourth of the southern border." This significant amendment affronts the separation of powers. By bypassing the "difficult and deliberative" processes of the Presentment Clause—and thereby undoing the legislative compromises necessary to specify the details of the statutory text—the Executive has been permitted to trample the very "minority interests" that the Act was enacted to protect. *Gundy v. U.S.*, 588 U.S. 128, 154–56 (2019) (Gorsuch, J., dissenting).

Second, the Government's attempt to distinguish *Clinton v. City of New York*, 524 U.S. 417 (1998), also fails. Contrary to the Government's reading, Opp. at 17, Section 102(c) implicates the same concern the Court had in *Clinton*: in exercising immense authority to dispense with duly enacted statutes, the Secretary has been allowed to substitute her own policy judgment for that of Congress, just as the President was able to do in cancelling line items. *Clinton*, 524 U.S. at 444. In addition, the Court in *Clinton* rejected the government's defense that Congress intended the cancellation of items, which is essentially the same argument the Government advances here with respect to waiver decisions. Opp. at 17. The fact that Congress anticipates the Executive to act on the waiver authority is of no moment and in no way "alter[s] the procedures" of the Presentment Clause. *Clinton*, 524 U.S. at 445-46.

---

[7] Amicus Brief for Dr. Seymour et al. Supporting Petitioners at 14-15, 23, *McAleenan*, 404 F. Supp. 3d 218 (D.D.C. 2019), *cert. denied*, 141 S. Ct. 158 (2020) (No. 19-975).

| | | |
|---|---|---|
| 1 | DATED: September 19, 2025 | Respectfully submitted, |
| 2 | | */s/ Anchun Jean Su* |
| 3 | | ANCHUN JEAN SU (DC Bar No. CA285167) |
| 4 | | HOWARD M. CRYSTAL (DC Bar No. 446189) |
| 5 | | CENTER FOR BIOLOGICAL DIVERSITY |
| 6 | | 1411 K Street N.W., Suite 1300 |
| | | Washington, D.C. 20005 |
| 7 | | Telephone:   (202) 849-8399 |
| 8 | | Emails:      jsu@biologicaldiversity.org |
| | | hcrystal@biologicaldiversity.org |
| 9 | | *Admitted Pro Hac Vice* |

TALA DIBENEDETTO (NY Bar No. 5836994)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 371
Oceanside, NY 11572-037
Telephone: (718) 874-6734, ext. 555
Email: tdibenedetto@biologicaldiversity.org
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*