BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

ALEXANDER J. YUN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
202-674-0255
Alex.Yun@usdoj.gov
*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Center for Biological Diversity, *et. al.*, | |
| Plaintiffs, | 4:25-cv-00365-AMM-TUC |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Kristi Noem, in her official Capacity as Secretary of Homeland Security, *et al.*, | |
| Defendants. | |

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION............................................................**Error! Bookmark not defined.** 1

I.    The Government Properly Characterized the Nature and Scope of the Waiver Provision. ............................................................... 2

II.   The Waiver Provision Contains Sufficient, Meaningful Boundaries on the Secretary's Authority. ............................................... 5

III.  Plaintiffs Mischaracterize the Prior Cases. ......................................... 7

IV.   The Waiver Provision Does Not Violate the Presentment Clause ...................... 9

CONCLUSION ............................................................**Error! Bookmark not defined.** 11

# TABLE OF AUTHORITIES

**Cases**

*Acree v. Republic of Iraq,*
  370 F.3d 41 (D.C. Cir. 2004) ........................................................................10

*Am. Power & Light Co. v. SEC,*
  329 U.S. 90 (1946) ...........................................................................................5

*Clinton v. City of N.Y.,*
  524 U.S. 417 (1998) .......................................................................................11

*Cnty. of El Paso v. Chertoff,*
  No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008) ...........................8

*Ctr. for Biological Diversity v. McAleenan,*
  404 F. Supp. 3d 218 (D.D.C. 2019) ...............................................................8

*Defs. of Wildlife v. Chertoff,*
  527 F. Supp. 2d 119 (D.D.C. 2007) .......................................................*passim*

*In re Border Infrastructure Env't Litig.,*
  284 F. Supp. 3d 1092 (S.D. Cal. 2018)................................................ 8, 9, 10

*In re NSA Telecomm. Records Litig.,*
  671 F.3d 881 (9th Cir. 2011) ....................................................................4, 10

*J.W. Hampton, Jr. Co. v. United States,*
  276 U.S. 394 (1928) .........................................................................................5

*Loving v. United States,*
  517 U.S. 748 (1996) .........................................................................................8

*Mistretta v. United States,*
  488 U.S. 361 (1989) .........................................................................................5

*N. Am. Butterfly Ass'n v. Nielsen,*
  368 F. Supp. 3d 1 (D.D.C. 2019) ...................................................................8

*Nat'l Broadcasting Co. v. United States,*
  319 U.S. 190 (1943) .........................................................................................9

*Republic of Iraq v. Beaty,*
  556 U.S. 848 (2009) .......................................................................................10

*Save Our Heritage Org. v. Gonzales,*
  533 F. Supp. 2d 58 (D.D.C. 2008) .................................................................9

*Sierra Club v. Ashcroft,*
  No. 04CV0272-LAB, 2005 U.S. Dist. LEXIS 44244 (S.D. Cal. Dec. 12, 2005)........4, 5

*Sierra Club v. Trump,*
  379 F. Supp. 3d 883 (N.D. Cal. 2019) ...............................................8

*Touby v. United States,*
  500 U.S. 160 (1991) ........................................................................6

*Whitman v. Am. Trucking Ass'ns,*
  531 U.S. 457 (2001) ................................................................ 6, 7, 9

*Yakus v. United States,*
  321 U.S. 414 (1944) ........................................................................9

*Youngstown Sheet & Tube Co. v. Sawyer,*
  343 U.S. 579 (1952) ........................................................................4

*Zivotofsky v. Kerry,*
  576 U.S. 1 (2015) ............................................................................4

**Statutes**

Dep't of Homeland Security Appropriations Act, 2008, Pub. L. No. 110-161, Div. E,
  Title V § 564, 121 Stat. 1844  (2007) .............................................8

Endangered Species Act of 1973, Pub. L. No. 93-205, 87 Stat.884 (1973).........................2

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-
  208, 110Stat. 3009 (1996) ...............................................................1

Secure Fence Act of 2006, Pub. L. No. 109-367,§ 3, 120 Stat. 2638 (2006) ....................8

**Other Authorities**

*In Defense of Big Waiver,*
  113 Colum. L. Rev. 265 (2013) ......................................................11

National Environmental Policy Act of 1969, H.R. Rep. 109-72 (May 3, 2005) ................2

**INTRODUCTION**

Plaintiffs write as though the sky is falling. Using dramatic language of "hallmark," "astonishing," and "immense," they paint an apocalyptic picture of an unchecked Executive. But the sky is not falling, and the Secretary's delegated authority is not a tyrannical abuse of constitutional principles. Rather, Congress determined that expeditious completion of border infrastructure construction, as expressed in the passage and amendment of § 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996), is important enough to outweigh compliance with other laws—including environmental laws and others that can lead to protracted litigation. Acting through proper lawmaking procedures, Congress delegated clearly defined authority for this specific, singular purpose.

It was Congress that adopted a broad mandate to "take such actions as may be necessary to install additional physical barriers and roads . . . in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." IIRIRA § 102(a). And it was Congress that provided for the Secretary of Homeland Security, in her "sole discretion," to "waive all legal requirements . . . [she] determines necessary to ensure expeditious construction of the barriers and roads under this section." *Id.* § 102(c). The Court should reject Plaintiffs' various attempts to limit § 102 and overturn Congress's exercise of legislative judgment. None of Plaintiffs' arguments are persuasive, and this Court should grant summary judgment in favor of Defendants on all counts, as has every other court that has considered these same issues.

1

## I.    The Government Properly Characterized the Nature and Scope of the Waiver Provision.

Plaintiffs accuse the government of mischaracterizing the nature of the waiver provision. They claim that Congress did not make a policy choice but rather left all discretion up to the Secretary of Homeland Security. Not so. As explained in Defendants' Motion for Summary Judgment, Congress did make a policy choice in the form of prioritization. Congress prioritized border wall construction over the protections afforded by other laws in the U.S. Code. While it allowed the Secretary to decide which laws to waive, those decisions are merely an enforcement of the Congressional priority.

Congress's decision to waive specific laws itself is evident from the IIRIRA's legislative history. In its initial form, the IIRIRA waived only two laws: the Endangered Species Act of 1973, Pub. L. No. 93-205, 87 Stat. 884 (1973), and the National Environmental Policy Act of 1969, H.R. Rep. 109-72, at 170-71 (May 3, 2005) (Conf. Rep.). This, however, did not stop creative litigants from resorting to other laws to inhibit border construction. *See id.* at 171 (explaining that border construction was delayed by a dispute involving the Coastal Zone Management Act). As such, Congress found it necessary to extend the Secretary's waiver authority to "all laws that he or she determines, in his or her sole discretion, are necessary to ensure the expeditious construction of the border barriers." *Id.* The declared intent being "to ensure that judicial review of actions or decisions of the Secretary not delay the expeditious construction of border security infrastructure, thereby defeating the purpose of the Secretary's waiver." *Id.* at 172.

2

This is precisely the type of case in which delegation is appropriate. Congress articulated a policy, but it could not anticipate every attempt to thwart it. Therefore, it gave the Secretary, with her superior knowledge about the need for border infrastructure construction, the authority to make individual choices on a case-by-case basis.

Plaintiffs contend that the IIRIRA lacks sufficient guidance or criteria for waiving laws. But Plaintiffs misunderstand the nature of Congress's intent in giving the Secretary waiver authority. Congress did not instruct the Secretary to weigh competing interests in deciding to waive a law; she simply must decide if a law will inhibit the mandate to expeditiously build at the border. Accordingly, there is no merit to Plaintiffs' claim that the Secretary needs "relevant expertise over the entire U.S. Code . . . to evaluate . . . the interests . . . in other laws against the interest in prompt project construction." Pls. Opp'n 4, ECF No. 21. This requirement is nowhere in the nondelegation case law. The Secretary need not have expertise over every law she waives; rather, she must comprehend and implement the intelligible principle that Congress articulated. The only "expertise" needed is whether a particular law will inhibit expeditious construction—a decision that is appropriately vested in the Secretary of Homeland Security.

Plaintiffs also claim that the government's reliance on national security is misplaced. Plaintiffs misunderstand the government's argument. Defendants do not deny that the Secretary's waiver implicates interests other than national security. The point is that the Secretary waives laws to further security of the Nation's border, a core national security interest. As other courts have recognized, Congress may delegate in broader terms regarding border infrastructure because the Executive Branch has significant independent

3

control over immigration, foreign affairs, and national security. *Sierra Club v. Ashcroft*, No. 04CV0272-LAB (JMA), 2005 U.S. Dist. LEXIS 44244, at *22-23 (S.D. Cal. Dec. 12, 2005); *Defs. of Wildlife v. Chertoff*, 527 F. Supp. 2d 119, 126, 129 (D.D.C. 2007); *cf. In re NSA Telecomm. Records Litig.*, 671 F.3d 881, 897 (9th Cir. 2011) (holding that when the delegation "arises within the realm of national security . . . the intelligible principle standard need not be overly rigid"). Thus, Congress's constitutional delegation, plus the Executive's independent national security authority, combine to put the waiver delegation on even stronger footing. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J. concurring) ("When the President acts pursuant to an express or implied authorization of Congress, his authority is at its maximum, for it includes all that he possesses in his own right plus all that Congress can delegate."). While it must "still [be] the Legislative Branch, not the Executive Branch, that makes the law," *Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015), Congress has made the law here. The delegated authority to waive laws impeding expeditious construction of this important infrastructure does not usurp that function.

Finally, much of Plaintiffs' argument centers on the scope of the delegation. According to Plaintiffs, because the IIRIRA is so massive a delegation, it must be unconstitutional. But scope of delegation is the wrong inquiry. Rather, "the relevant inquiry is whether the Legislative Branch has laid down an intelligible principle to guide the Executive Branch, not the scope of the waiver power." *Defs. of Wildlife*, 527 F. Supp. 2d at 129.

## II.  The Waiver Provision Contains Sufficient, Meaningful Boundaries on the Secretary's Authority.

Plaintiffs' Non-Delegation Doctrine claim fails because the intelligible principle that Congress provided to guide DHS's exercise of delegated discretion is well within the bounds provided by existing precedent.  This conclusion has been repeatedly recognized by the many courts that have addressed this same issue.  *See* Defs.' Mot. at 6, ECF No. 18.

Here, Congress provided "an intelligible principle to which the person or body authorized to [act] is directed to conform." *J.W. Hampton, Jr. Co. v. United States*, 276 U.S. 394, 409 (1928).  Defendants have shown that § 102(a) delineates a "general policy," *Mistretta v. United States*, 488 U.S. 361, 373 (1989)—that improving border protection by expediting the construction of necessary barriers and roads is a high Congressional priority. *See, e.g.*, *Sierra Club*, 2005 U.S. Dist. LEXIS 44244, at *20; *Defs. of Wildlife*, 527 F. Supp. 2d at 127. There is also no doubt about "the boundaries of this delegated authority." *Mistretta*, 488 U.S. at 373 (quoting *Am. Power & Light Co. v. SEC,* 329 U.S. 90, 105 (1946)). Congress included a geographic boundary—waivers may only be issued in connection with construction "in the vicinity of the United States border."  And Congress included temporal "necessity" as a second boundary. *See id.* § 102(c)(2) (permitting waiver of legal requirements where "necessary to ensure expeditious construction" at those locations; *Defs. of Wildlife*, 527 F. Supp. 2d at 127. As Defendants' opening motion explained, Congress adopted this approach of targeted flexibility because it could not sufficiently anticipate the ways that existing laws would be wielded to frustrate Congress' priorities. Such "necessity" determinations can be delegated. *See Whitman v. Am. Trucking*

5

*Ass'ns*, 531 U.S. 457, 475 (2001); *Touby v. United States*, 500 U.S. 160, 163 (1991).

Plaintiffs attempt to evade this conclusion by arguing that the geographic boundary limitation in the statute—that construction occur "in the vicinity of the United States border" — is not a meaningful constraint because Border Patrol Officers have authority to operate anywhere within 100 miles of the U.S. border, which could include New York City or Los Angeles. Pls. Opp'n 6-7. Plaintiffs, however, cannot create a constitutional problem by confusing the plain text of the geographical limit on construction authority in § 102 with the separate authority for the location of Border Patrol enforcement operations. Plaintiffs' speculation that the Secretary will build a wall through the heart of Washington, DC, is merely rhetorical hyperbole that has no basis in historical precedent. The requirement that DHS build infrastructure "in the vicinity of the United States border" is anything but "limitless geographic discretion." *Id.* at 7.

Plaintiffs further claim that the word "necessity" is inadequately defined. They claim that the Secretary lacks expertise in the waived laws and therefore cannot determine whether waiving them is necessary. As argued above, however, the Secretary does not need expertise in any given law. The necessity requirement applies to the temporal requirement to construct border infrastructure expeditiously. If a law could inhibit expeditious construction, then waiving it is necessary under the statute. Here, both the geographic boundary and the temporal necessity boundary are reasonable limitations on the agency's delegated discretion. *See, e.g.*, *Defs. of Wildlife*, 527 F. Supp. 2d at 127 (concluding that Congress provided a sufficient boundary by instructing that "the Secretary may waive only those laws that he determines necessary to ensure expeditious construction" (cleaned up)).

Plaintiffs focus largely on the breadth of the agency's discretion under § 102 but disregard its narrowly confined scope—only infrastructure construction in the vicinity of the border, and only waiver of laws that impede expeditious completion of that construction. This is not nearly as broad as even the discretion involved in *Whitman*, 531 U.S. at 475—"setting air standards that affect the entire national economy." *Id.* at 475 (not requiring "the statute to decree . . . how 'necessary' was necessary enough"). And because the discretion here is far narrower in scope, there is less need for detailed criteria to guide exercise of that discretion. *See id.* at 474 ("[T]he degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred.").

Lastly, Plaintiffs argue that the Secretary's continuous use of her waiver authority, even when she possesses independent authority to build border wall, shows that the IIRIRA's boundaries are hollow. But in today's litigious climate, Congress recognized that the Secretary can only accomplish border construction if she waives laws that may otherwise hinder the construction. Nothing about that delegation of authority runs afoul of the Constitution.

## III.    Plaintiffs Mischaracterize the Prior Cases.

Plaintiffs argue that prior cases are unpersuasive because they address an earlier version of the IIRIRA. As an initial matter, five cases have been decided under the current version of the IIRIRA. *See Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218 (D.D.C. 2019); *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018); *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 922-23 (N.D. Cal. 2019), *aff'd*, 963 F.3d 874 (9th Cir. 2020), *vacated and remanded sub nom. Biden v. Sierra Club*, 142 S. Ct.

7

46 (2021); *N. Am. Butterfly Ass'n v. Nielsen*, 368 F. Supp. 3d 1 (D.D.C. 2019), *aff'd in part, rev'd in part and remanded sub nom. N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244 (D.C. Cir. 2020); *Cnty. of El Paso v. Chertoff*, No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008). These cases all found the current version of the law constitutional.

Moreover, every case to examine the IIRIRA's constitutionality was decided after the 2005 amendment, which gave the Secretary full waiver authority. The only amendments afterwards addressed the geographical regions for construction. *See* Dep't of Homeland Security Appropriations Act, 2008, Pub. L. No. 110-161, Div. E, Title V § 564, 121 Stat. 1844 (2007); Secure Fence Act of 2006, Pub. L. No. 109-367, § 3, 120 Stat. 2638 (2006). The current iteration of the law requires the Secretary to "construct reinforced fencing along not less than 700 miles of the southwest border[.]"Title V § 564, 121 Stat. at 1897. Thus, the only changes to the IIRIRA regard geographic scope, and it is well settled that "there is no legal authority or principled basis upon which a court may strike down an otherwise permissible delegation simply because of its broad scope." *Defs. of Wildlife*, 527 F. Supp. 2d at 128 (citing *Loving v. United States*, 517 U.S. 748, 771 (1996)).

Additionally, both *In re Border Infrastructure Environmental Litigation* and *Save Our Heritage* addressed the non-delegation doctrine with the understanding that § 102(c) was being applied to infrastructure construction conducted under § 102(a) rather than 102(b). *See In re Border Infrastructure Envtl. Litig.*, 284 F. Supp. 3d at 1116-19, 1131-35; *Save Our Heritage Org. v. Gonzales*, 533 F. Supp. 2d 58, 61, 63 (D.D.C. 2008). And regardless, "Congress is not confined to that method of executing its policy which involves the least possible delegation of discretion to administrative officers." *Yakus v. United*

*States*, 321 U.S. 414, 425-26 (1944); *see also Whitman*, 531 U.S. at 474 (noting that "even in sweeping regulatory schemes [the Court has] never demanded . . . that statutes provide a determinate criterion for saying how much of the regulated harm is too much" (cleaned up)). Details about construction type, location, and project timing are well within the scope of what Congress frequently and permissibly delegates. *See, e.g.*, *Yakus*, 321 U.S. at 426 (upholding delegation to Price Administrator to fix commodity prices that would be fair and equitable, and would effectuate purposes of Emergency Price Control Act of 1942); *Nat'l Broadcasting Co. v. United States*, 319 U.S. 190, 225-26 (1943) (upholding delegation to FCC to regulate broadcast licensing as "public interest, convenience, or necessity" require).

**IV.    The Waiver Provision Does Not Violate the Presentment Clause**

Plaintiffs contend that the waiver provision violates the Presentment Clause because it is broader than any other waiver provisions in the U.S. Code. This argument misses the mark. The Presentment Clause presents a procedural issue: did the Executive repeal a law without going through the constitutionally mandated procedures? Whether the waiver applies to one law or all is inconsequential. Indeed, the breadth and subject matter of § 102(c)'s waiver authority do not alter the fact that:

> [t]he Secretary has no authority to alter the text of any statute, repeal any law, or cancel any statutory provision, in whole or in part. Each of the [] laws waived by the Secretary . . . retains the same legal force and effect as it had when it was passed by both houses of Congress and presented to the President.

*Defs. of Wildlife*, 527 F. Supp. 2d at 124; *see also In re Border Infrastructure Envtl. Litig.*, 284 F. Supp. 3d at 1141 (quoting same).

Plaintiffs cite no authority for the proposition that Congress, in providing authority for a statute to be waived by the Executive Branch in certain circumstances, violates the Presentment Clause. In fact, numerous courts have rejected similar arguments. *See Republic of Iraq v. Beaty*, 556 U.S. 848, 861 (2009) ("The [statutory] proviso *expressly* allow[ing] President to render certain statutes inapplicable . . . . did not repeal anything, but merely granted the President authority to waive the application of particular statutes to a single foreign nation."); *Acree v. Republic of Iraq*, 370 F.3d 41, 64 n.3 (D.C. Cir. 2004) (Roberts, J., concurring) (dismissing constitutional challenge to statute permitting President to make inapplicable to Iraq "any other provision of law that applies to countries that have supported terrorism," because the authorized actions "are a far cry from the line-item veto at issue in *Clinton*, and are instead akin to the waivers that the President is routinely empowered to make in other areas, particularly in the realm of foreign affairs"); *Telecomm. Records*, 671 F.3d at 895 (rejecting Presentment Clause challenge to an "executive grant of immunity or waiver of claim," on the ground that it "has never been recognized as a form of legislative repeal").

Plaintiffs cannot avoid this authority by seeking to recharacterize the waiver, both as a repeal or as an amendment. As addressed in Defendants' Motion for Summary Judgement, waiver is not repeal or amendment, and courts addressing this issue have routinely held the same. *See* Defs' Mot. 15-16.

Finally, Plaintiffs argue that the IIRIRA allows the Secretary to substitute her policy judgment for that of Congress. As explained in the government's Motion, however, Congress exercised its policy judgment in passing the IIRIRA and the Secretary is only

executing the will of Congress. Defs. Mot. 17. This stands in marked contrast to the Line Item Veto Act in *Clinton,* under which specific statutory provisions would no longer have any effect. *See Clinton v. City of N.Y.*, 524 U.S. 417, 438 (1998). Here, no amount of exercise of this waiver authority will reach more than a tiny fraction of the universe of cases to which NEPA and similar statutes apply. And no provision of any such statute will be deprived of its legal force and effect. Notably, the law review article that Plaintiffs cite both defends this waiver provision and concludes that the IIRIRA does not violate the Presentment Clause.[1]

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to Defendants on all counts and deny Plaintiffs' motions for summary judgment on all counts.

---

[1] David J. Barron, Todd D. Rakoff, *In Defense of Big Waiver*, 113 Colum. L. Rev. 265, 339 (2013) ("As a matter of constitutional law, there is no presentment problem in this pattern — the waived statutes are in no sense vetoed.")

Dated: <u>November 14, 2025</u>        Respectfully submitted,


BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

<u>/s/   Alexander J. Yun</u>
ALEXANDER J. YUN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
202-674-0255
Alex.Yun@usdoj.gov

*Counsel for Defendants*

12