IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Kristi Noem, et al.,<br><br>Defendants. | No. CV-25-00365-TUC-AMM (JEM)<br><br>**REPORT AND RECOMMENDATION** |

This matter is on referral to the undersigned for report and recommendation. (Doc. 10.) Before the Court are the parties' cross-motions for summary judgment. (Doc. 11, 18.) The motions are fully briefed.[1] (Doc. 18, 21, 30.) As more fully set forth below, this Court recommends that the district court grant Defendants' motion for summary judgment and deny Plaintiffs' motion for summary judgment.

**I.    The Action**

On July 8, 2025, Plaintiffs Center for Biological Diversity and Conservation CATalyst filed a complaint against Defendants Kristi Neom, Secretary of the United States Department of Homeland Security, United States Department of Homeland Security, and United States Custom and Border Protection Agency ("Defendants") seeking to halt

---

[1] This Court denies the request for oral argument. The briefs submitted thoroughly discuss the parties' positions and applicable law, and oral argument will not aid the Court's decision-making process which is entirely based on a question of law. *Warden v. Walkup*, No. CV-13-00283-TUC-DCB, 2020 WL 1694752, at *2 (D. Ariz. Apr. 7, 2020) (citing *Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999)).

construction of a border wall (the "Arizona Border Wall Project") that when complete will, according to Plaintiffs, negatively impact the migration patterns of several indigenous species, including jaguars which have been designated as endangered in the United States. (Doc. 1.)

Plaintiff Center for Biological Diversity ("Center") is a non-profit environmental organization headquartered in Tucson, Arizona focused on the protection of native species and their habitats through science, policy, and environmental law. *Id*. at ¶ 13.

Plaintiff Conservation CATalyst ("Conservation") is a Tucson-based nonprofit organization that specializes in, *inter alia*, conducting scientific research on wild cats in conflict with people, including jaguars and ocelots in and near the proposed Arizona Border Wall Project. *Id*. at ¶ 21.

The Complaint alleges that Plaintiffs Center and Conservation, and their respective members, are harmed by Defendants alleged constitutional violations caused by construction of a border fence. Plaintiffs allege that "[t]he construction—which will occur without the benefit of compliance with NEPA,[2] the ESA[3] and other laws—will negatively impact the wildlife habitat and imperiled species" and cause injury to Plaintiffs' various interests in those habitats and species. *Id*.

In their first claim for relief, Plaintiffs allege that §102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") unconstitutionally delegates to the executive branch power that can only be exercised by the legislature. Id. at ¶¶ 51-59.

In their second claim for relief, Plaintiffs assert a presentment clauses claim. *Id*. at ¶¶ 60-65. They allege that IIRIRA "Section 102(c), as written, is facially invalid because it vests unilateral power in the DHS Secretary to waive the application of any laws in areas along the border for purposes of building border walls without Congress passing a law to void the specific laws at issue or limit their application, and presenting it to the President,

---

[2] National Environmental Policy Act of 1969 (42 U.S.C. §§ 4321-4370m-12).

[3] Endangered Species Act of 1973 (16 U.S.C. §§ 1531-44).

as required by Article I, Section 7 of the U.S. Constitution." (Doc. 1 at ¶ 63.)

## II. Framework

### a. The IIRIRA

The relevant background of the IIRIRA was recognized by United States District Judge Gonzalo P. Curiel in the United States District Court for the Southern District of California when he observed:

> In 1996, Congress enacted the [IIRIRA], which, pursuant to Section 102(a), required the Attorney General to "take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." Pub. L. No. 104–208, Div. C., Title I, § 102(a), 110 Stat. 3009, 3009–554 (1996), codified at 8 U.S.C. § 1103 note. IIRIRA Section 102(c), as originally enacted, authorized the Attorney General to waive the [ESA] and the [NEPA] when he determined such waiver "was necessary to ensure expeditious construction of the barriers and roads under this section." *Id*. § 102(c). The Homeland Security Act of 2002 abolished the Immigration and Naturalization Service and transferred responsibility for the construction of border barriers from the Attorney General to the Department of Homeland Security ("DHS"). Pub. L. No. 107–296, 116 Stat. 2135 (2002).
>
> In 2005, the REAL ID Act, Pub. L. No. 109–13, Div. B, Title I, § 102, 119 Stat. 231, 302, 306 (May 11, 2005), amended the waiver authority of section 102(c) expanding the Secretary of DHS' authority to waive "all legal requirements" that the Secretary, in his or her own discretion, determines "necessary to ensure expeditious construction of the barriers and roads under this section." *Id*. It also added a judicial review provision that limited the district court's jurisdiction to hear any causes or action concerning the Secretary's waiver authority to solely constitutional claims. *Id*. § 102(c)(2)(A). Further, the provision foreclosed appellate court review and directed any review of the district court's decision be raised by petition for a writ of certiorari with the Supreme Court of the United States. *Id*. § 102(c)(2)(C).
>
> Section 102 consists of three sections: (1) section 102(a) describes the general purpose of the statute; (2) section 102(b) specifies Congress' mandate for specific border barrier construction; and (3) section 102(c) grants the Secretary the discretion to waive "all legal requirements" he or she "determines necessary to ensure expeditious construction of the barriers and

roads" and provides for limited judicial review of the Secretary's waiver decision to solely constitutional violations. *See* 8 U.S.C. § 1103 note.

*In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092, 1103–04 (S.D. Cal. 2018), *aff'd*, 915 F.3d 1213 (9th Cir. 2019). In 2019, then-District Judge Ketanji Brown Jackson in the United States District Court for the District of Columbia recognized:

> [In the] 23 years that have transpired since the initial passage of the IIRIRA, Congress has amended the statute not only to identify additional priority areas for construction, *see* Secure Fence Act of 2006, Pub. L. No. 109-367, § 3, 120 Stat. 2638, 2638–39 (2006); Dep't of Homeland Sec. Appropriations Act, 2008, Pub. L. No. 110-161, § 564, 121 Stat. 1844, 2090–91 (2008), but also to expand the waiver authority to include all laws (not just the two environmental statutes), and to limit significantly the jurisdiction of the federal courts to adjudicate challenges to waivers that are issued pursuant to the IIRIRA's rapid-construction mandate, *see* REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, Title I, § 102, 119 Stat. 231, 306 (2005).

*Cntr. for Biological Diversity v. McAleenan*, 44 F. Supp. 3d 218, 224 (D. D.C. 2019).

      b. <u>IIRIIA §102</u>

To facilitate the construction of physical barriers in the vicinity of the United States border IIRIRA §102 provides in relevant part:

> (a) **In general**.—The Secretary of Homeland Security shall take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States.
>
> **(b) Construction of fencing and road improvements along the border.—**
>
> **(1) Additional fencing along southwest border**.—
>
> **(A) Reinforced fencing**.—In carrying out subsection (a) [of this note], the Secretary of Homeland Security shall construct reinforced fencing along not less than 700 miles of the southwest border where fencing would be most practical and effective and provide for the installation of additional physical barriers, roads, lighting, cameras, and sensors to gain operational control of the

southwest border.

**(B) Priority areas**.—In carrying out this section [Pub. L. 104–208, Div. C, Title I, § 102, Sept. 30, 1996, 110 Stat. 3009–554, which amended this section and enacted this note], the Secretary of Homeland Security shall—

**(i)** identify the 370 miles, or other mileage determined by the Secretary, whose authority to determine other mileage shall expire on December 31, 2008, along the southwest border where fencing would be most practical and effective in deterring smugglers and aliens attempting to gain illegal entry into the United States; and

**(ii)** not later than December 31, 2008, complete construction of reinforced fencing along the miles identified under clause (i).

**(C) Consultation**.—

**(i)** **In general**.—In carrying out this section, the Secretary of Homeland Security shall consult with the Secretary of the Interior, the Secretary of Agriculture, States, local governments, Indian tribes, and property owners in the United States to minimize the impact on the environment, culture, commerce, and quality of life for the communities and residents located near the sites at which such fencing is to be constructed.

**(ii)** **Savings provision**.—Nothing in this subparagraph may be construed to—

**(I)** create or negate any right of action for a State, local government, or other person or entity affected by this subsection; or

**(II)** affect the eminent domain laws of the United States or of any State.

**(D) Limitation on requirements**.—Notwithstanding subparagraph (A), nothing in this paragraph shall require the Secretary of Homeland Security to install fencing, physical barriers, roads, lighting, cameras, and sensors in a particular location along an international border of the United States, if the Secretary

> determines that the use or placement of such resources is not the most appropriate means to achieve and maintain operational control over the international border at such location.
>
> **(2) Prompt acquisition of necessary easements**.—The Attorney General, acting under the authority conferred in section 103(b) of the Immigration and Nationality Act (as inserted by subsection (d)) [subsec. (b) of this section], shall promptly acquire such easements as may be necessary to carry out this subsection and shall commence construction of fences immediately following such acquisition (or conclusion of portions thereof).
>
> **(3) Safety features**.—The Attorney General, while constructing the additional fencing under this subsection, shall incorporate such safety features into the design of the fence system as are necessary to ensure the well-being of border patrol agents deployed within or in near proximity to the system.
>
> **(4) Authorization of appropriations**.—There are authorized to be appropriated such sums as may be necessary to carry out this subsection. Amounts appropriated under this paragraph are authorized to remain available until expended.
>
> **(c) Waiver.**—
>
> **(1) In general.**—Notwithstanding any other provision of law, the Secretary of Homeland Security shall have the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section. Any such decision by the Secretary shall be effective upon being published in the Federal Register.

*In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1104-05 (quoting 8 U.S.C. § 1103 note).

### c. Historical Waivers Under the IIRIRA

The Secretary has issued many IIRIRA waiver determinations to facilitate construction of barriers and roads along the United States borders since 2005. *See, e.g.*, 84 Fed. Reg. 21798 (May 15, 2019), 2019 WL 2103799; 82 Fed. Reg. 42829 (Sept. 12, 2017), 2017 WL 3978070; 82 Fed. Reg. 35984 (Aug. 2, 2017), 2017 WL 3267409; 73 Fed. Reg.

19078 (Apr. 8, 2008), 2008 WL 925194; 72 Fed. Reg. 60870 (Oct. 26, 2007), 2007 WL 3117661; 70 Fed. Reg. 55622 (Sept. 22, 2005), 2005 WL 2295005.[4]

### d. The June 2025 Waiver

On January 20, 2025, President Donald J. Trump issued Proclamation No. 10886, entitled "Declaring a National Emergency at the Southern Border of the United States," directing the Secretary of Homeland Security to "immediately take all appropriate action, consistent with law . . . to construct additional physical barriers along the southern border." 90 Fed. Reg. 8327.

Also on January 20, 2025, President Trump issued Executive Order 14165, entitled "Securing Our Borders," directing the Secretary of the Department of Homeland Security to "take all appropriate action to deploy and construct" physical barriers along the U.S.-Mexico border "to ensure [its] complete operational control." 90 Fed. Reg. 8467.

On June 5, 2025, Defendant Kristi Noem ("Noem"), in her capacity as Secretary of the Department of Homeland Security ("Secretary"), published a waiver (the "June 2025 Waiver") determination under the IIRIRA. 90 Fed. Reg. 23946 (June 5, 2025), 2025 WL 1580568. The June 2025 Waiver concerns two separate sections in the U.S. Border Patrol Tucson Sector (the "Tucson Sector"). *Id*. The first starts approximately one mile west of Border Monument 121 and extends east to Border Monument 117; the second starts at

---

[4] As Defendants point out these waiver determinations did not go unchallenged. *See, e.g., See Ctr. for Biological Diversity*, 404 F. Supp. 3d 218, *cert. denied*, 141 S. Ct. 158 (June 29, 2020); *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092, *aff'd*, 915 F.3d 1213 (9th Cir. 2019), *cert. denied*, 586 U.S. 1035 (Dec. 3, 2018); *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 922-23 (N.D. Cal. 2019), *aff'd*, 963 F.3d 874 (9th Cir. 2020), *vacated and remanded*, 142 S. Ct. 42 (2021); *N. Am. Butterfly Ass'n v. Nielsen*, 368 F. Supp. 3d 1 (D. D.C. 2019), *aff'd in part, rev'd in part*, 977 F.3d 1244 (D.C. Cir. 2020); *Cnty. of El Paso v. Chertoff*, No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008), *cert. denied*, 557 U.S. 915 (2009); *Save Our Heritage Org. v. Gonzalez*, 533 F. Supp. 2d 58 (D.D.C. 2008); *Defs. of Wildlife v. Chertoff*, 527 F. Supp. 2d 119 (D. D.C. 2007), *cert. denied*, 554 U.S. 918 (2008); *Sierra Club v. Ashcroft*, No. 04-272, 2005 WL 8153059 (S.D. Cal. Dec.13, 2005). However, in each of these cases the court ultimately rejected the argument that the exercise of the subject waiver was an improper/unconstitutional act by the executive branch.

Border Monument 99 and extends west approximately 33.4 miles. 90 Fed. Reg. 23946, 2025 WL 1580568. *See also* Doc. 12 at pp. 2-3, ¶¶ 2-3. According to the June 2025 Waiver, Secretary Noem chose these sections because she determined that the Tucson Sector is an area of high illegal entry, with over 463,000 illegal aliens and thousands of pounds of illegal drugs apprehended in 2024. 90 Fed. Reg. 23946, 2025 WL 1580568.

Secretary Noem announced the waiver of certain laws "with respect to the construction of physical barriers and roads . . . in the project area . . . including all federal, state, or other laws, regulations, and legal requirements of, deriving from, or related to the subject of, the [listed] statutes." *Id*. at 23946-47, 2025 WL 1580568.

### III. Summary Judgment Standard

Rule 56, Fed. R. Civ. P., requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 233 (quoting Fed. R. Civ. P. 56(a)). "However, in cases challenging agency action, '[t]he entire case on review is [ordinarily] a question of law, and only a question of law[,]' *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993), and, therefore, the summary judgment standard functions slightly differently." *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 233 (citation omitted). "[I]n the context of [ . . . ] constitutional separation of powers claims, there are no questions of fact, because whether or not a statute or the Constitution grants the [Executive Branch] the power to act in a certain way is a pure question of law." *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 233 (quoting *Am. Fed. of Gov't Emps., AFL-CIO v. Trump*, 318 F. Supp. 3d 370, 394 (D.D.C. 2018), *rev'd on other grounds*, 929 F.3d 748 (D.C. Cir. 2019)) (additional citation omitted).

### IV. The Cross-Motions For Summary Judgment

In support of their request for judgment in their favor on their first claim for relief, Plaintiffs argue that §102 violates the non-delegation doctrine for want of an intelligible principle; namely, a failure to delineate a general policy and a failure to meaningfully bind

the Secretary. (Doc. 11 at pp. 13-19: Doc. 21 at pp. 9-10.)[5] They urge that the "mere objective" of "building barriers does not circumscribe the Secretary's waiver discretion." (Doc. 11 at pp. 16-17; Doc. 21 at pp. 9-10.)

In so arguing, Plaintiffs recognize that district court rulings considering the Security's waiver authority under §102 found a sufficient intelligible principle (and therefore found that the Secretary's waiver authority did not violate the non-delegation doctrine) but insist that "those courts were mistaken." *See* Doc. 21 at p. 13 and Doc. 11 at pp. 16-17 n. 3 (recognizing that "the D.C. district court concluded that §102(a) provided the general policy of an intelligible principle through the general purpose of building barriers to deter illegal entry, while §102(c) provided sufficient boundaries of an intelligible principle through the term "necessary to ensure expeditious construction[]" . . . and arguing that "the district court misunderstood the nature of the delegation authority being challenged[]" and that "[o]ther judges have upheld IIRIRA border wall waiver decisions[] similarly misconstruing the nature of the delegated authority and the dearth of Congressional guideposts at issue.").

In support of their request for judgment in their favor on their second claim for relief, Plaintiffs argue that the June 2025 Waiver and §102 violate the presentment clauses. (Doc. 11 at pp. 19-21.) Plaintiffs contend that "the Secretary's waiver functions as partial repeals of, or amendments to, the underlying laws being waived." *Id*. at p. 19.

Defendants argue that §102 does not violate non-delegation caselaw. (Doc. 18 at pp. 5-12.) They argue the district courts that have addressed Plaintiffs' claims have repeatedly found that there is a general policy espoused in §102 and that the Secretary's waiver authority is sufficiently bounded. (Doc. 18 at pp. 16-18.) Defendants also argue that §102's waiver provision does not violate the presentment clauses. *Id*. at pp. 20-23.

This Court agrees with Defendants, recognizing the guidance from the district courts that have already addressed the constitutionality of §102 on the grounds raised by Plaintiffs.

---

[5] The page numbers referred to in the parties' briefs are to the page numbers assigned by the Court's CM/ECF system.

**V.     Analysis**

     a.  <u>This Court Finds No Non-Delegation Doctrine Violation</u>

"In determining whether a delegation of authority from Congress to the Executive Branch is impermissibly broad, a court asks whether the status in question sets forth 'an intelligent principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'" *Save Our Heritage Org. v. Gonzales*, 533 F. Supp. 2d 58, 62 (D. D.C. 2008) (quoting *Mistretta v. United States*, 488 U.S. 361, 372, 109 S.Ct. 657 (1989) (additional citation omitted). "Congress's ability to delegate power is broad and a statute need only 'clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'" *Save Our Heritage Org.*, 533 F. Supp. 2d at 62 (quoting *Mistretta*, 488 U.S. at 372-73, 109 S.Ct. 647 (additional citation omitted). *See also Defs. of Wildlife*, 527 F. Supp. 2d at 126-27 (recognizing that the Supreme Court has widely permitted Congress to delegate legislative authority provided that Congress offer sufficient guidance); *In re Border Infrastructure Env'l Litig.*, 284 F. Supp. 3d at 1131 (recognizing that "[u]nder the intelligible principle standard, a statute delegating authority is constitutional if it 'clearly delineates [ (1) ] the general policy, [ (2) ] the public agency which is to apply it,[6] and [ (3) ] the boundaries of the delegated authority.'" (quoting *Mistretta*, 488 U.S. at 372-73, 109 S.Ct. 647)).

     *1. §102 Clearly Delineates a General Policy*

Plaintiffs argue that §102 does not clearly delineate a general policy because the scope of delegation of power to the executive branch is overly broad. Considering the persuasive authority from the other district courts that have decided this issue, this Court rejects Plaintiffs' argument.

For instance, in finding that §102 clearly delineates a general policy the district court

---

[6] Neither party disputes that the IIRIRA satisfies the second prong of the intelligible principle standard.

in *Defs. of Wildlife*, found:

> In order to exercise the waiver authority under the REAL ID Act, Congress has required the Secretary to determine if the waiver is "necessary to ensure expeditious construction of the barriers and roads under [section 102 of IIRIRA]." 8 U.S.C. § 1103 note. Furthermore, he is directed to construct fencing only "in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." *Id*. This legislative directive meets the requirements of the Supreme Court's nondelegation cases. The "general policy" is "clearly delineated"—i.e. to expeditiously "install additional physical barriers and roads ... to deter illegal crossings in areas of high illegal entry." *Mistretta*, 488 U.S. at 372–73, 109 S.Ct. 647; 8 U.S.C. § 1103 note.

527 F. Supp. 2d at 127. In finding that §102 clearly delineates a general policy, the district court in *Cntr. for Biological Diversity* followed the decision in *Defs. of Wildlife*, holding:

> "[i]n order to exercise the waiver authority under the [IIRIRA], Congress has required the Secretary to determine if the waiver is 'necessary to ensure expeditious construction of the barriers and roads under [section 102 of IIRIRA].' " [527 F. Supp. 2d] at 127 (second alteration in original) (quoting IIRIRA § 102 (c)(1)). Congress has further directed the Secretary "to construct fencing only 'in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States.' " *Id*. (quoting IIRIRA § 102(a)). With these statutory limitations in mind, Judge Huvelle then concluded that "[t]his legislative directive meets the requirements of the Supreme Court's nondelegation cases[,]" *id*., because "[t]he 'general policy' is 'clearly delineated'—*i.e.* to expeditiously 'install additional physical barriers and roads ... to deter illegal crossings in areas of high illegal entry[,]' " *id*. (ellipsis in original) (quoting *Mistretta*, 488 U.S. at 372–73, 109 S.Ct. 647; IIRIRA § 102(a)).
>
> . . .
>
> In the instant case, Plaintiffs have challenged the exact same statutory provision—the IIRIRA's section 102(c)(1)—on the exact same separation-of-powers grounds, and they have done so by repackaging essentially the same constitutional arguments that Judge Huvelle found unpersuasive in *Defenders of Wildlife*.
>
> . . .
>
> Therefore, this Court sees no reason to diverge from Judge Huvelle's

reasoning or conclusions under the circumstances presented in this case. *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 247-49. (footnote omitted).

In *In re Border Infrastructure Env'l Litig.*, the district court rejected the plaintiffs' argument that §102 did not "survive *Mistretta* scrutiny." 284 F. Supp. 3d at 1132. The court there found that "Congress clearly delineated the 'general policy' of [§]102 as deterrence of illegal crossings through construction of additional physical barriers to improve U.S. border protection, 8 U.S.C. § 1103, and has satisfied the first prong of the intelligible principle standard." *Id.* at 1133. In so finding, the district court recognized that previous courts have identified the general policy of §102 as "border protection" and have "identified deterrence of illegal crossings as a motivating factor in this policy." *Id.* (citing *Sierra Club v. Ashcroft*, Case No. 09-cv-272-LAB (JMA), 2005 WL 8153059 (S.D. Cal. 2005); *Defs. of Wildlife*, 527 F. Supp. 2d 119).

Considering the foregoing, this Court rejects Plaintiffs' argument that §102 lacks a general policy. Courts that have considered this issue have repeatedly held that Congress clearly delineated the "generally policy" of §102 as the deterrence of illegal crossings by way of the construction of additional physical barriers along the United States border. This Court finds the same.

### 2. The Secretary's Authority is Meaningfully Bounded

Plaintiffs argue that the Secretary's authority is not meaningfully bounded, citing the number of laws that could be waived pursuant to §102(c). (Doc. 11 at p. 14.) Plaintiffs urge the district court to conclude that the terms "necessary" and "expeditious" fail to act as meaningful boundaries for waiving laws and claim that "the mere objective of building barriers" fails to provide guidance to "the Secretary's decision-making process on which laws to bypass in favor of border wall construction." *Id.* at pp. 15-16. Again, considering the persuasive authority that has already rejected Plaintiffs' arguments, this Court recommends that the district court here reject them as well.

In *Defs. of Wildlife*, the district court determined:

> [a]nd, the "boundaries" of the delegated authority are clearly defined by

> Congress's requirement that the Secretary may waive only those laws that he determines "necessary to ensure expeditious construction." *Mistretta*, 488 U.S. at 372–73, 109 S.Ct. 647; 8 U.S.C. § 1103 note.

527 F. Supp. 2d at 127. The district court recognized that "despite the surface appeal of plaintiffs' arguments . . . there is no legal authority or principled basis upon which a court may strike down an otherwise permissible delegation simply because of its broad scope." *Id.* (citing *Loving v. United States*, 517 U.S. 748, 771, 116 S.Ct. 1737 (1996) (holding that "[w]e have since [1935] upheld, without exception, delegations under standards phrased in sweeping terms.")). In *Cntr. for Biological Diversity* the court recognized:

> Significantly for present purposes, Judge Huvelle [in *Defs. of Wildlife*] further noted that "even if, as argued by plaintiffs, this waiver provision is unique insofar as the number of laws that may be waived is theoretically unlimited, the Secretary may only exercise the waiver authority for the 'narrow purpose' prescribed by Congress: 'expeditious completion' of the border fences authorized by IIRIRA in areas of high illegal entry." *Id.* at 128 (quoting *Sierra Club*, 2005 WL 8153059, at *6, 2005 U.S. Dist. LEXIS 44244, at *20).

404 F. Supp. 3d at 247.

As repeatedly recognized by the district courts that have already considered this issue, the relevant inquiry is whether the Secretary has exercised her waiver authority for the narrow purpose prescribed by Congress—such purpose being the expeditions completion of the border fences authorized by the IIRIRA in areas of high illegal entry. Accordingly, this Court rejects Plaintiffs' argument the Secretary's waiver authority under §102(c) is not meaningfully constrained considering the number of laws that may theoretically be waived.

Plaintiffs rely upon *Whitman v. American Trucking Ass'n*, 531 U.S. 457, 475, 121 S.Ct. 903 (2001), urging that "Congress did not even mandate that the Secretary seek expert guidance and input through fact-finding hearings, public comment process, intra-agency consultation, or other mechanisms to inform the Secretary's waiver decision of which laws would take more or less time to comply with." (Doc. 11 at p. 15.) However, as recognized by *In re Border Infrastructure Env'l Litig.*, "in upholding Congress's broad delegation of

power to the EPA Administrator, the *Whitman* Court noted that even in sweeping regulatory schemes we have never demanded . . . that statutes provide a determination criterion for saying how much [of the regulated harm] is too much." 284 F. Supp. 3d at 1134 (quoting *Whitman*, 531 U.S. at 475) (internal quotations omitted). This Court is not persuaded by Plaintiffs' argument that §102 violates the non-delegation doctrine because of Congress's failure to impose a requirement that the Secretary "seek expert guidance and input" before issuing a waiver decision.

Plaintiffs also urge that neither the term "necessary" nor "expeditious" are "meaningful boundaries . . . because they are defined exclusively by whatever the Secretary desires them to mean in her 'sole discretion.'" (Doc. 11 at p. 15.) However, as pointed out by Defendants, the *Whitman* Court held that the "necess[ity]" standard "fits comfortably within the scope of discretion permitted by our precedent." *See Whitman*, 531 U.S. at 475-76. *See also Touby v. United States*, 500 U.S. 160, 163 (1991) (approving delegation of authority to designate a controlled substance for purposes of criminal drug enforcement if "necessary to avoid an imminent hazard to the public safety."). Furthermore, this Court finds that the scope of the Secretary's authority—authority that is limited to construction in the vicinity of the United States border—is sufficiently confined such that this Court is not persuaded to recommend that the district court hold that §102 violates the non-delegation doctrine on the basis that the term "expeditious" is an "insufficient boundary." *See Whitman*, 531 U.S. at 475 (recognizing that "the degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred.") (citing *Loving*, 517 U.S. at 772-73).

Plaintiffs argue that the "IIRIRA authority to nullify laws that impede border construction requires the Secretary's knowledge of the operation of laws fully outside DHS's expertise and jurisdiction." (Doc. 21 at p. 12.) As noted above, no such knowledge on the Secretary's part is required. Additionally, as the other district courts that have already adjudicated this issue recognized, "[w]hen the area to which the legislation pertains is one where the Executive Branch already has significant independent constitutional

authority, delegations may be broader than in other contexts." *Defs. of Wildlife*, 527 F. Supp. 2d at 129 (citing *Sierra Club*, 2005 WL 8153059). "The construction of the border fence pertains to both foreign affairs and immigration control—areas over which the Executive Branch traditionally exercises independent constitutional authority." *Defs. of Wildlife*, 527 F. Supp. 2d at 129. The "Executive [Branch] has a degree of discretion and freedom from statutory restriction which would not be admissible were domestic affairs alone involved." *Id.* (citations omitted). When "Congress legislates regarding foreign affairs or immigration control, 'it is not dealing alone with a legislative power. It is implementing an inherent executive power.'" *Id.* (quoting *Knauff v. Shaughnessy*, 338 U.S. 537, 542, 70 S.Ct. 309 (1950)). Because these powers are "also inherent in the executive department of the sovereign, Congress may in broad terms authorize the [E]xecutive [Branch] to exercise [them.']" *Defs. of Wildlife*, 527 F. Supp. 2d at 129 (quoting *Knauff*, 338 U.S. at 543, 70 S.Ct. 309).

Accordingly, this Court finds that meaningful boundaries are placed on the Secretary's §102(c) waiver authority and concludes there is no violation of the non-delegation doctrine.

### b. This Court Finds No Presentment Clauses Violation

Article I of the Constitution requires that all federal legislation pass both houses of Congress, and "before it become a Law, be presented to the President of the United States: If he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it." U.S. Const. art. I, § 7. Clauses 2 and 3 of Article I, § 7 are referred to as the "presentment clauses."[7] *See United States v. Scampini*, 911 F.2d 350, 351 (9th Cir. 1990). The United States Court of Appeals for the Ninth Circuit has recognized that, "[i]n brief, the presentment clauses require that all legislation be presented to the President so that he may have the opportunity to exercise his veto power before any

---

[7] Caselaw uses both the terms "presentment clauses" and "presentment clause." *See Scampini*, 911 F.2d at 351 (using "presentment clauses"); *In re Border Infrastructure Env'l Litig.*, 284 F. Supp. 3d at 1140 (using "presentment clause").

legislation becomes law." *Id.*

Plaintiffs argue that Congress's delegation of authority to waive federal statutes violates the lawmaking procedures required under Article I, § 7 of the Constitution. (Doc. 11 at pp. 19-21.) Plaintiffs rely on *Clinton v. City of New York*, 524 U.S. 427, 438, 118 S.Ct. 2091 (1998). In *Clinton*, the United States Supreme Court struck down the Line-Item Veto Act of 1996, which gave the President the authority to "cancel" certain federal spending items that had been passed by Congress. *Clinton*, 524 U.S. at 438, 118 S.Ct. 2091. In so holding, the Court found that the Line-Item Veto Act allowed the President to amend acts of Congress by repealing portions of them. *Id.* The Court held that the cancellation procedures in the Line-Item Veto Act were unconstitutional holding that "[t]here is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes." *Id.*

In rejecting the argument that Plaintiffs make here, the district court in *Defs. of Wildlife* distinguished *Clinton* holding, in relevant part:

> The REAL ID Act's waiver provision differs significantly from the Line[-]Item Veto Act [in *Clinton*]. The Secretary has no authority to alter the text of any statute, repeal any law, or cancel any statutory provision, in whole or in part. Each of the twenty laws waived by the Secretary on October 26, 2007, retains the same legal force and effect as it had when it was passed by both houses of Congress and presented to the President. The fact that the laws no longer apply to the extent they otherwise would have with respect to the construction of border barriers and roads within the SPRNCA does not, as plaintiffs argue, transform the waiver into an unconstitutional "partial repeal" of those laws. By that logic, any waiver, no matter how limited in scope, would violate Article I because it would allow the Executive Branch to unilaterally "repeal" or nullify the law with respect to the limited purpose delineated by the waiver legislation. [ . . . ] If the REAL ID Act's waiver provision is unconstitutional under *Clinton*, numerous other statutory authorizations of executive waivers would also be invalid. Such a conclusion is certainly not supportable under *Clinton* or any other case cited by plaintiffs.

*Defs. of Wildlife*, 527 F. Supp. 2d at 124–25. *See also In re Border Infrastructure Env'l Litig.*, 284 F. Supp. 3d at 1141 (finding no presentment clauses violation and distinguishing

*Clinton* finding "the [w]aivers are narrow in scope and only for the purpose of building border barriers something that is permitted by [§]102(c).").

District courts have repeatedly rejected the argument that Plaintiffs present to this Court, i.e., that the Secretary's waiver under §102 is a "repeal" of any waived legislation. *See Defs. of Wildlife*, 527 F. Supp. 2d at 125 (rejecting the plaintiffs' argument that because the waived "laws no longer apply to the extent they otherwise would have with respect to the construction of border barriers and roads within the SPRNCA the waiver [is] an unconstitutional 'partial repeal' of those laws[]"); *In re Border Infrastructure Env'l Litig.*, 284 F. Supp. 3d at 1141 (following *Defs. of Wildlife* and holding "the Secretaries' [w]aiver [d]eterminations made pursuant to [§]102(c) do not violate the [p]resentment [c]lause.").

Accordingly, this Court recommends that the district court find no presentment clause violation.

## VI.    Recommendation

It is recommended that the district court **GRANT** Defendants' motion for summary judgment (Doc. 18) and **DENY** Plaintiffs' motion for summary judgment (Doc. 11). Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen (14) days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen (14) days. No reply brief may be filed unless leave is granted by District Judge Angela M. Martinez. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **25-cv-365-AMM**.

Dated this 2nd day of December, 2025.



James E. Marner
United States Magistrate Judge