Anchun Jean Su (DC Bar No. CA285167)
Howard M. Crystal (DC Bar No. 446189)
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
Tel: (202) 849-8399
Emails: jsu@biologicaldiversity.org
        hcrystal@biologicaldiversity.org
*Admitted Pro Hac Vice*

Tala DiBenedetto (NY Bar No. 5836994)
P.O. Box 371
Oceanside, NY 11572-0371
Tel: (718) 874-6734, ext. 555
Email: tdibenedetto@biologicaldiversity.org
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION**

|  |  |
|---|---|
| Center for Biological Diversity; and Conservation CATalyst, <br><br> *Plaintiffs*, <br><br> v. <br><br> Kristi Noem, in her official capacity as Secretary of Homeland Security; U.S. Department of Homeland Security; and U.S. Customs and Border Protection, <br><br> *Defendants*. | Case No. 25-cv-365-AMM <br><br> **PLAINTIFFS' OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION** <br><br> (Oral Argument Requested) |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................... iii

INTRODUCTION AND STANDARD OF REVIEW.......................................................1

OBJECTIONS ..................................................................................................................3

    I. Objection No. 1: The Report Erroneously Concludes that the Waiver
       IIRIRA § 102(c) Comply with the Non-Delegation Doctrine..................................3

        A.    The Report Misunderstands the Nature of the IIRIRA § 102(c)
                Waiver Authority and Thus Errs in Finding a General Policy in
                the Delegation ..............................................................................................3

        B.    The Report Mistakenly Finds that IIRIRA Provides Meaningful
                Boundaries to the Capacious IIRIRA Waiver Authority.................................5

    II. Objection No. 2: The Report Erroneously Concludes that the Waiver
       and IIRIRA § 102(c) Comply with the Presentment Clause. ...................................9

CONCLUSION .............................................................................................................10

Plaintiffs' Objection to Magistrate's Report and Recommendation            25-cv-365-AMM

# TABLE OF AUTHORITIES

## Cases

*Baxter v. Sullivan*,
  923 F.2d 1391 (9th Cir. 1991) ...................................................................2

*Clinton v. City of New York*,
  524 U.S. 417 (1998)...............................................................................10

*Ctr. for Biological Diversity v. McAleenan*,
  404 F. Supp. 3d 218 (D.D.C. 2019)...........................................................7

*Defs. of Wildlife v. Chertoff*,
  527 F. Supp. 2d 119 (D.D.C. 2007)...................................................7, 9, 10

*FCC v. Consumers' Rsch.*,
  606 U.S. 656 (2025).................................................................................7

*In re Border Infrastructure Envtl. Litig.*,
  284 F. Supp. 3d 1092 (S.D. Cal. 2018)......................................................7

*Mertens v. Hewitt Assocs.*,
  508 U.S. 248 (1993).................................................................................5

*Mistretta v. U.S.*,
  488 U.S. 361 (1989).................................................................................5

*Schooler v. Umom New Day Ctrs.*,
  2025 U.S. Dist. LEXIS 210968 (Oct. 27, 2025)..........................................2

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001).............................................................................5, 8

## Constitutional Provisions

U.S. CONST. art. I, § 7 ......................................................................................2, 3

## Statutes

8 U.S.C. §1103 ...................................................................................................1

28 U.S.C. § 636(b)...............................................................................................1

28 U.S.C. § 636(b)(1)(C)......................................................................................2

IIRIRA § 102, as amended (codified at 8 U.S.C. § 1103 note)

  IIRIRA § 102(a)............................................................................................6, 7

  IIRIRA § 102(b)...............................................................................................7

  IIRIRA § 102(c)........................................................................................passim

Pub. L. 104-208, Div. C, 110 Stat. 3009-546, as amended
  (codified at 8 U.S.C. § 1103 note) .................................................................1

Plaintiffs' Objection to Magistrate's Report and Recommendation                25-cv-365-AMM

**Rules**

90 Fed. Reg. 23946 (June 5, 2025)...............................................................................1

Fed. R. Civ. P. 72(b)(2) .................................................................................................1

**Other Authorities**

David J. Barron et al., *In Defense of Big Waiver*, 113 COLUM. L. REV. 265, 290 (2013).......................................................................................................................10

MS Now, *The Rachel Maddow Show: Pritzker digs in against Trump abuse of National Guard* (YouTube, Oct. 6, 2025), https://www.youtube.com/watch?v=uBSxsJ7QCO4 6

Plaintiffs' Objection to Magistrate's Report and Recommendation                    25-cv-365-AMM

## INTRODUCTION AND STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and 28 U.S.C. § 636(b), Plaintiffs hereby object to Magistrate Judge Marner's December 2, 2025 Report and Recommendation rejecting Plaintiffs' claims in this case. Order of Dec. 2, 2025, ECF No. 31 ("Report").

In June 2025, Department of Homeland Security ("DHS") Secretary Kristi Noem waived compliance with over 34 federal laws—and all Tribal, state, and local laws deriving therefrom—to expedite the construction of a 30-foot-tall border wall, roads, and other disruptive infrastructure cleaving through over 40 miles of southeastern Arizona ("the Project"). 90 Fed. Reg. 23946 (June 5, 2025) ("the Waiver"). Rather than comply with bedrock laws designed to protect communities and the environment, Secretary Noem invoked § 102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which purports to grant the DHS Secretary legislative authority to "waive all legal requirements" that she determines, in her "sole discretion," are "necessary to ensure expeditious construction" of physical barriers near the border. Pub. L. 104-208, Div. C, 110 Stat. 3009-546, as amended (codified at 8 U.S.C. § 1103 note).[1]

Secretary Noem waived these laws even though the Project will sever the richly biodiverse San Rafael Valley, which serves as the endangered jaguar's most important remaining passageway into Mexico to find breeding partners and resources critical for its continued existence in the U.S. The Valley also provides crucial connectivity for other iconic wildlife, including black bear and endangered ocelot.

---

[1] All subsequent undesignated statutory references herein refer to IIRIRA, as amended (codified at 8 U.S.C. §1103 note), unless otherwise designated.

Plaintiffs' Objection to Magistrate's Report and Recommendation          25-cv-365-AMM

Rather than minimizing these threats by complying with the nation's bedrock environmental laws, the DHS Secretary unconstitutionally waived these and other laws protecting public health, religious freedoms, and Native American rights across the Project's vast area. This highly troubling waiver is just one of the latest applications of IIRIRA § 102(c), the most sweeping waiver authority ever enacted by Congress, which vests in an unelected Executive official the power to waive any laws regarding any subject matter, across all jurisdictions, and as applied to an immense geography, in perpetuity.

The Constitution vests in Congress alone the distinct and exclusive authority to establish the relative priority of national policies and make law for the nation. Yet IIRIRA § 102(c) impermissibly endows an unelected Executive official with paradigmatic legislative authorities: (1) the *policymaking* power to independently pick and choose which of the thousands of statutorily-protected interests should be discarded by nullifying laws in the name of border wall construction without any intelligible principle, violating the non-delegation doctrine enshrined in Article I, § 1 of the Constitution; and (2) the *lawmaking* power to independently repeal the statutes securing those interests without complying with bicameralism and presentment procedures, violating the Presentment Clause of Article I, § 7 of the Constitution.

This Court considers objections to a magistrate judge's report and recommendations de novo. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); *Schooler v. Umom New Day Ctrs*., 2025 U.S. Dist. LEXIS 210968, *210968 (Oct. 27, 2025) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)). Here, Plaintiffs respectfully specifically object to two of the Report's legal conclusions: (1) the Report erroneously concludes that the Waiver and IIRIRA § 102(c) do not violate the non-delegation doctrine;

and (2) the Report erroneously concludes that the Waiver and IIRIRA § 102(c) do not violate the Presentment Clause, U.S. CONST. art. I, § 7. Plaintiffs urge the Court to reject the Report's recommendation, strike down IIRIRA § 102(c), and vacate the Waiver. Plaintiffs also respectfully request oral argument and timely resolution of this action.

## OBJECTIONS

**I.      Objection No. 1: The Report Erroneously Concludes that the Waiver and IIRIRA § 102(c) Comply with the Non-Delegation Doctrine.**

**A. The Report Misunderstands the Nature of the IIRIRA § 102(c) Waiver Authority and Thus Errs in Finding a General Policy in the Delegation.**

As a threshold matter, the Report misapprehends the nature of the IIRIRA § 102(c) waiver authority—and, thus, the Report's legal conclusions flowing from this baseline misunderstanding are incorrect.[2] IIRIRA § 102(c) states that the Secretary "shall have the authority to waive all legal requirements [that] such Secretary, in such *Secretary's sole discretion*, determines *necessary to ensure expeditious construction* of the barriers and roads under this section." (Emphasis added). The precise authority challenged here is the DHS Secretary's quintessentially legislative power to: (1) consider the relative prioritization of expeditiously constructing the border wall against the universe of all other legally protected public and private interests, including those which fall entirely outside the Secretary's zone of expertise (*e.g.*, civil rights, public health, environmental) and lawful jurisdiction (interests protected by state, local, and tribal laws); and (2) then make

---

[2] The Report mischaracterizes Plaintiffs' argument by suggesting that Plaintiffs contend that § 102 does not delineate "a general policy because the scope of delegation of power to the executive branch is overly broad." Report at 10. While Plaintiffs do challenge the waiver authority's girth with respect to whether IIRIRA offers meaningful boundaries (a separate part of the legal test), the general policy of deterring illegal entry does nothing to inform the Secretary's decision-making to sweep aside other legal interests.

Plaintiffs' Objection to Magistrate's Report and Recommendation                25-cv-365-AMM

the major policy decision of choosing which laws to disregard—and which to comply with—in pursuing border barrier construction.

But the Report fails to meaningfully grapple with the nature of the delegation of picking and choosing which laws should be sacrificed for border wall construction and whether IIRIRA sufficiently guided that precise decision-making of ranking competing rights and legal interests. Like the prior cases the Report cites, nowhere does the Report engage with this nature of ranking protected interests embedded in the waiver authority, despite discussion of it by both Plaintiffs and Defendants. Pls.' Mot. Summ. J., ECF No. 11 ("Pls.' Mot.") at 6–9; Defs.' Opp'n Summ. J., ECF No. 18 ("Opp.") at 8.[3]

As a consequence of misunderstanding the underlying waiver authority, the Report's conclusion that § 102 provides the general policy—specifically, of "expeditiously 'install[ing] additional physical barriers and roads . . . to deter illegal crossings in areas of high illegal entry'"—to satisfy the first element of the intelligible principle test, Report at 11-12, is logically flawed. The Supreme Court's intelligible principle test requires Congress "lay down by legislative act an intelligible principle" which "clearly delineates the general policy" and "boundaries of th[e] delegated authority." *Mistretta v. U.S.*, 488 U.S. 361, 372-73 (1989) (internal quotations omitted). But here, the general goal of deterring illegal entry does nothing to inform the Secretary's

---

[3] Of course, Congress itself would have had the authority to decide border wall construction is so important that no other laws should apply. But it did not. Thus, the underlying constitutional issue here—which the Report ignores—is that Congress has delegated that quintessentially legislative power of ranking statutorily-protected interests against border wall construction to DHS. Indeed, it bears emphasizing that absent the challenged waiver, the massive construction occurring in important wildlife habitat would be subject to environmental statutes that Congress passed to protect vital national interests.

Plaintiffs' Objection to Magistrate's Report and Recommendation                25-cv-365-AMM

wavier authority of deliberating on which laws to nullify and weighing competing statutorily-protected interests. The fact that DHS is tasked with building infrastructure to deter illegal entry in no way prescribes how the Secretary is to decide which protected interests to keep or discard to achieve this general goal. The Supreme Court has held that broad and sweeping statements about "a statute's 'basic purpose' are [] inadequate to overcome the words of its text regarding the specific issue [the delegation encompassed in the §102(c) waiver authority] under consideration." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993).

**B. The Report Mistakenly Finds that IIRIRA Provides Meaningful Boundaries to the Capacious IIRIRA Waiver Authority.**

Echoing the Report's failure to engage with the nature of the waiver authority, the Report similarly ignores IIRIRA's massive scope of delegated power—thus rendering its subsequent conclusion that IIRIRA provides meaningful boundaries on the waiver authority faulty because it has miscalculated the authority's elephantine girth. As the Report itself acknowledges, the "degree of agency discretion that is acceptable varies according to the scope of the power congressional conferred," Report at 15 (citing *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475 (2001)), where the strictness of the intelligible principle test tightens and the level of agency deference permitted recedes as the breadth of the purported delegated power expands. But the Report—and the other courts it cites—constructs its analysis on an underestimated valuation of IIRIRA's scope.

Indeed, the Report does not even discuss the astonishing scope of the IIRIRA waiver authority outside of the "number of laws that may theoretically be waived." Report at 13. Nowhere does the Report engage with the immense scope of the IIRIRA waiver

Plaintiffs' Objection to Magistrate's Report and Recommendation                    25-cv-365-AMM

authority, despite the briefing. *E.g.*, Pls.' Mot. at 10. Thus, as explained in Plaintiffs' Motion, *id.*, IIRIRA § 102(c) grants the Secretary *carte blanche* power to (1) unilaterally repeal the application of *any and all laws*, (2) in order to pursue *any kind* of border construction (including not only border wall and roads but also lighting, water draining systems, and other destructive infrastructure, Plaintiffs' Statement of Facts ¶ 5, ECF No. 11-3 ("Pls.' SOF")), § 102(a) and (c), (3) at *any* time and *in perpetuity* (without any sunset date and including maintenance activity), (4) *anywhere* within the border's "vicinity," § 102(a)—which, per Custom and Border Protection's ("CBP") purview, Pls.' SOF at ¶ 12, could be anywhere within 100 miles of all U.S. borders (including the country's marine borders) and could be even hundreds of miles from any border as proven recently when CBP deployed troops in Chicago, Illinois.[4]

The Report nevertheless concludes that the "expeditious completion of the border fences authorized by IIRIRA in areas of high illegal entry" is a sufficient meaningful boundary that passes the intelligible principle test. Report at 13. However, neither the Report, nor the cases on which it relies, provide any reasoning as to how the breathtakingly large scope of the waiver authority in §102 is consistent with Congress' constitutional obligation to provide the Executive Branch with sufficient boundaries for a broadly delegated power. Indeed, as explained in Plaintiffs' Reply Brief, Pls.' Reply, 8-9, ECF No. 21, cases prior to 2017, including the heavily quoted *Defenders of Wildlife v. Chertoff*,

---

[4] MS Now, *The Rachel Maddow Show: Pritzker digs in against Trump abuse of National Guard,* (YouTube, Oct. 6, 2025)*,* https://www.youtube.com/ watch?v=uBSxsJ7QCO4. The fact that Chicago is hundreds of miles from any U.S. border further undermines any notion that Defendants' authority under IIRIRA § 102(a) is adequately constrained because DHS can only act within 100 miles of U.S. borders (Pls.' SOF at ¶ 12).

Plaintiffs' Objection to Magistrate's Report and Recommendation          25-cv-365-AMM

527 F. Supp. 2d 119, 128 (D.D.C. 2007), relied on the fact that, even as the statute was amended, Congress had confined the waiver authority to a specified geography and had not even contemplated a scenario where DHS would exceed § 102(b)'s 700-mile mandate—concluding that §§ 102(a) and (c) as then written provided an intelligible principle. *See*, *e.g.*, *Defs. of Wildlife*, 527 F. Supp. at 128.[5]

The Report also misapprehends Plaintiffs' arguments about what would constitute meaningful boundaries on such a prodigious scope of delegated authority. First, Plaintiffs did not argue that the waiver authority violates the non-delegation doctrine "because of Congress's failure to impose a requirement that the Secretary 'seek expert guidance and input' before using a waiver decision." Report at 14 (internal citations omitted). Rather, Plaintiffs have argued that, in shifting legislative power to the DHS Secretary, Congress failed to fulfill its basic obligation to at least set out *some* criteria, standards, or rules the Secretary should use to adjudicate whether it is necessary to sweep aside a statutorily protected interest and thus repeal existing law, and how to weigh the consequences against the need to proceed immediately with border wall projects. Pls.' Mot. at 13-14. Thus, the

---

[5] Nonetheless, once DHS interpreted § 102(c)'s delegation to authorize projects even beyond the 700 miles enumerated in §102(b), subsequent rulings largely relied on the prior cases finding a sufficient intelligible principle without reconsidering the appropriate constitutional limit in light of the expanded nature of the delegation. *See*, *e.g.*, *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 248 (D.D.C. 2019) ("this Court sees no reason to diverge from [*Defenders of Wildlife*'s] reasoning"); *In re Border Infrastructure Envtl. Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018). But those courts were mistaken. They did not contemplate how prior courts' findings of an intelligible principle must be reconsidered in light of DHS's claim that the waiver authority applied to a far greater geographic scope than before—thereby ignoring that no "one size fits all" with respect to the intelligible principle test, *FCC v. Consumers' Rsch.*, 606 U.S. 656, 721 (2025) (Gorsuch, J., dissenting), where the strictness of the test tightens when the breadth of the purported delegated power expands.

§ 102(c) delegation is missing the kind of substantive guidance that the Supreme Court has found necessary to sustain past constitutional delegations—for example, requiring that the agency seek expert guidance and input through fact-finding hearings, public comment processes, intra-agency consultation, or other mechanisms to inform the agency's decision. *Cf. Whitman*, 531 U.S. at 475.

Second, the Report wrongly concludes the term "necessary" is sufficient as a meaningful boundary based on the logic that "the *Whitman* Court held that the necessity standard fits comfortably within the scope of discretion permitted by our precedent." Report at 14 (cleaned up). But in *Whitman*, 531 U.S. at 465, the delegated authority to the Environmental Protection Agency to set air pollution standards at the level "requisite" to protect the public health fell squarely within the agency's exclusive legal jurisdiction and scientific expertise. Here, the Report never grappled with the fact that, in stark contrast to *Whitman*, the IIRIRA authority to nullify any laws when necessary requires the Secretary to consider the importance of fulfilling the Congressional mandates associated with innumerable laws fully outside the Secretary's expertise and jurisdiction.

The Report similarly does not explain why it concluded that the term "expeditious" acts as a sufficient boundary. The Report ignores Plaintiffs' argument that the terms "necessary" and "expeditious" do not serve as an adequate boundary for waiving laws because they are defined exclusively by whatever the Secretary desires them to mean in her "sole discretion." Pls. Mot. at 15.

In reaching this conclusion, the Report erroneously finds that the IIRIRA waiver authority does not require the Secretary to have any knowledge of the laws it is choosing to waive. Report at 14. But the Report's lack of analysis begs the question: If the Secretary

8

has no expertise in the *operation* of the numerous laws she is called to (and routinely does) waive and need not even consult the agencies with such expertise, on what "intelligible" basis is the Secretary making judgments that waiving any of these laws is actually "necessary"? The Report has no coherent answer, and there is none.

Finally, the Report's agreement with other courts that the delegation here may be less constrained because "delegations may be broader" "when the area to which the legislation pertains is one where the Executive Branch already has significant independent constitutional authority" is also incorrect. Report at 15 (citing *Defs. of Wildlife*, 527 F. Supp. 2d at 129). While the Secretary may possess expertise and have shared authority in border security touching on foreign relations, the policy-making power enshrined in § 102(c) implicates the far wider universe of all public and private domestic interests protected by the laws the Secretary is empowered to waive —*i.e.,* not only the entire U.S. Code, but every law of the state, Tribal Nation, and locality where the project will occur.

## II.     Objection No. 2: The Report Erroneously Concludes that the Waiver and IIRIRA § 102(c) Comply with the Presentment Clause.

Although the Report relies on prior decisions finding that IIRIRA § 102(c) does not violate the Presentment Clause, the Magistrate did not grapple with Plaintiffs' arguments as to why those cases were decided incorrectly. The Report erroneously finds that the Secretary's waiver is not a "'repeal' of any waived legislation," Report at 17, and cites the *Defenders of Wildlife* court to conclude that any waived law "retains the same legal force and effect as it had when it was passed by both houses of Congress and presented to the President." *Defs. of Wildlife*, 527 F. Supp. 2d at 124-25.

But that court—and the Report here—is doubly mistaken. First, because of §

Plaintiffs' Objection to Magistrate's Report and Recommendation                    25-cv-365-AMM

102(c)'s behemoth nature, the IIRIRA waivers inevitably function as amendments to the underlying laws being waived. Thus, when Secretary Noem waives 34 federal laws, she is effectively adding a new provision stating that the laws do not apply when she says so. Contrary to the Report's finding, such an amendment alters each of those statutes' "legal force or effect" as applied to the construction of the Waiver's border barriers. *Clinton v. City of New York*, 524 U.S. 417, 438 (1998). As explained in Plaintiffs' Motion, Pls.' Mot. at 15-16, any attempt to minimize the constitutional implications of § 102(c) waivers on the grounds that they narrowly apply to individual border projects must be rejected because the cumulative effect of the § 102(c) Waiver amounts to *significant repeals of dozens of underlying statutes for hundreds of miles of activities in perpetuity*.

Second, the *Defenders of Wildlife* court wrongly likened § 102(c) to plain vanilla waiver provisions, concluding that finding IIRIRA unconstitutional would mean "numerous other statutory authorizations of executive waivers would also be invalid, . . . a conclusion . . . not supportable under *Clinton*." Report at 16 (citing *Defs. of Wildlife*, 527 F. Supp. 2d at 124-25). But that massively distorts the scope of § 102(c), which entails the most sweeping waiver authority ever enacted by Congress.[6] This is a difference not only of degree but kind. With authority this capacious, the Secretary's power to waive is, effectively, the power to repeal—collapsing the separation of powers.

## CONCLUSION

Plaintiffs respectfully urge the Court to reject the Magistrate's Report and sustain Plaintiffs' objections.

---

[6] *See* David J. Barron et al., *In Defense of Big Waiver*, 113 COLUM. L. REV. 265, 290 (2013).

Plaintiffs' Objection to Magistrate's Report and Recommendation          25-cv-365-AMM

DATED: December 15, 2025

Respectfully submitted,

*/s/ Anchun Jean Su*
ANCHUN JEAN SU (DC Bar No. CA285167)
HOWARD M. CRYSTAL (DC Bar No. 446189)
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street N.W., Suite 1300
Washington, D.C. 20005
Telephone:   (202) 849-8399
Emails:        jsu@biologicaldiversity.org
                    hcrystal@biologicaldiversity.org
*Admitted Pro Hac Vice*


TALA DIBENEDETTO (NY Bar No. 5836994)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 371
Oceanside, NY 11572-037
Telephone: (718) 874-6734, ext. 555
Email: tdibenedetto@biologicaldiversity.org
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

Plaintiffs' Objection to Magistrate's Report and Recommendation          25-cv-365-AMM